(No. 80322.—

THE VILLAGE OF WINFIELD, Appellant, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Appellees.

*Opinion filed March 20, 1997.*

Barry L. Moss, George A. Marchetti and Daniel C. Shapiro, of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and John P. Schmidt, Assistant Attorney General, of Chicago, of counsel), for appellee Illinois State Labor Relations Board.

Thomas P. Polacek, of Schenk, Duffy, Quinn, McNamara, Phelan, Carey & Ford, Ltd., of Joliet, for appellee Metropolitan Alliance of Police, Winfield Police Chapter No. 138.

Beth Ann Janicki, of Springfield, Thomas H. Trager,

of Vonachen, Lawless, Trager & Slevin, of Peoria, and R. Theodore Clark, Jr., and Hallie B. Goldman, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for *amici curiae* Illinois Municipal League & Village of Peoria Heights.

Phillip B. Lenzini, of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, for *amicus curiae* Peoria Heights Public Library.

JUSTICE BILANDIC delivered the opinion of the court:

The Village of Winfield (the Village) appeals from a decision of the appellate court confirming the decision and order of the Illinois State Labor Relations Board (the Board) certifying the Metropolitan Alliance of Police, Winfield Chapter No. 138 (the union), as the duly elected collective-bargaining representative of certain employees of the Village police department. The Village contended that the Board did not have jurisdiction to consider the union's representation petition, pursuant to section 20(b) of the Illinois Public Labor Relations Act (the Act) (5 ILCS 315/20(b) (West 1992)), because the Village employs fewer than 35 employees. The appellate court held that the Village employed 35 or more employees and was therefore subject to the jurisdiction of the Board. Nos. 2—95—0042, 2—95—0335 cons. (unpublished order under Supreme Court Rule 23). We accepted the Village's petition for leave to appeal. 155 Ill. 2d R. 315. We now reverse the decision of the appellate court.

## FACTS

On December 6, 1993, the union filed a representation petition with the Board seeking to serve as the exclusive collective-bargaining agent for all full-time sworn patrol officers at or below the rank of sergeant and all records clerks employed by the Village of Win-

field. The Village challenged the jurisdiction of the Board, arguing that it was exempt from the Act because it did not employ 35 or more employees, as required by section 20(b) of the Act (5 ILCS 315/20(b) (West 1992)).

The parties stipulated that, if the Village should be found to employ 35 or more employees, the bargaining unit proposed in the petition would be appropriate. A hearing was held before an administrative law judge to determine whether the Village employed 35 employees. The Village conceded that it employed 22 individuals. The union contended that the Village should also be found to be the employer of nine employees of the Winfield Public Library and of six "summer staffers" in the Village public works department. The Village asserted that it was not the employer of the library employees and that the summer staffers could not be counted for section 20(b) purposes because they were "short-term employees," as defined in section 3(q) of the Act (5 ILCS 315/3(q) (West 1992)).

At the hearing, the Village presented the testimony of Village Manager Bryon Vana. Vana is responsible for the day-to-day administration of the Village. Vana testified that the Winfield Public Library has its own board of trustees, which is elected by the public. No library trustees are also Village trustees. No library employees are also Village employees. Vana further testified that the library prepares its own budget, which is separate from the Village's budget. The library board provides a copy of its budget to the Village. The library board also passes a resolution requesting a specific tax levy, which is then forwarded to the Village. The Village's tax levy ordinance includes a separate levy request for the library budget. The library pays its employees' salaries, which are an item in the library's budget. As a courtesy, the Village processes payroll checks for the library's employees. The Village provides no benefits to library

employees. The Village pays the bill for the library employees' health insurance, but is reimbursed by the library for those payments. The library has its own employment policies and the Village has no involvement in the hiring, firing or discipline of library employees. Vana also testified that the Village does not review or approve library expenditures. The library pays its own bills.

Exhibits were also presented in connection with the hearing. The Village submitted answers to questions propounded by the administrative law judge in which the Village stated that it has the discretion to disapprove the library's appropriation request, subject to court review. The Village also stated that it had never disapproved the library's appropriation request and it had never supplemented the library's budget with a Village appropriation.

The administrative law judge issued a recommended decision and order finding that the Village was a joint employer of the nine library employees and that the summer staffers were not short-term employees and could be counted for section 20(b) purposes. Accordingly, the administrative law judge found that the Village employed a total of 37 employees and was therefore subject to the jurisdiction of the Board. The Board issued an order adopting the recommendation of the administrative law judge and directing a representation election. The Board subsequently entered an order certifying the union as the duly elected collective-bargaining representative of the proposed bargaining unit. The Village appealed directly to the appellate court. 155 Ill. 2d R. 335. The appellate court confirmed the decision of the Board.

## ANALYSIS

The Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 1992)) provides a comprehensive

system of collective bargaining for certain public employers and their employees. Section 20(b) of the Act exempts certain employers from its scope. Section 20(b) provides:

"This Act shall not be applicable to units of local government employing less than 35 employees, except with respect to bargaining units in existence on the effective date of this Act and fire protection districts required by the Fire Protection District Act to appoint a Board of Fire Commissioners." 5 ILCS 315/20(b) (West 1992).

There is no dispute that the Village of Winfield is a unit of local government. Accordingly, if the Village employs fewer than 35 employees, it is exempt from the Labor Relations Act, and the Board has no jurisdiction to consider the Union's petition.

As noted, the Village concedes that it employs 22 individuals. The Village argues that it has no additional employees, and that it is therefore exempt from the Labor Relations Act under section 20(b). The union and the Board (hereinafter referred to jointly as appellees) contend that the Village is also the joint employer of nine employees of the Winfield Public Library, and that the six summer staffers in the Village's public works department should be counted as Village employees. Thus, the appellees argue, the Village employs 37 employees and is not exempt under section 20(b). We note that both of the appellees' contentions must be accepted in order for the Board to have jurisdiction in this case: if either the library employees or the summer staffers are not employees of the Village, the Village is exempt under section 20(b).

This appeal comes to us on review of an order of an administrative agency. Accordingly, reversal of the Board's decision is warranted only if it is against the manifest weight of the evidence. *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 507 (1990).

We first address whether the Village was properly found to be a joint employer of the employees of the Winfield Public Library.

The test for the existence of joint employers is whether " 'two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment.' " *Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453, 474 (1989), quoting *National Labor Relations Board v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982). Relevant factors to consider in making this determination include the "putative joint employer's role in 'hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job.' " *Orenic*, 127 Ill. 2d at 475, quoting J. Jansonius, *Use and Misuse of Employee Leasing*, 36 Lab. L.J. 35, 36 (1985). An important consideration in determining whether a particular entity is an employer is the extent to which that entity is necessary to create an effective bargaining relationship. *County of Will v. Illinois State Labor Relations Board*, 220 Ill. App. 3d 62 (1991).

With these principles in mind, we examine the relationship between the Village and the Winfield Public Library employees to determine whether the Village is a joint employer of the library employees. We conclude that the Village is not a joint employer of the library employees. Rather, the library, through the library board of trustees, possesses exclusive authority over the terms and conditions of the library employees' employment.

The Winfield Public Library was established pursuant to the Illinois Local Library Act (75 ILCS 5/1—.01

*et seq.* (West 1992)) by the vote of the citizens of the Village. See 75 ILCS 5/2—2 (West 1992). Where the public votes to establish a library in a village such as the Village of Winfield, the Local Library Act provides that a seven-member board of library trustees (the library board) shall be elected at the same time as the library establishment election. 75 ILCS 5/4—3 (West 1992). The trustees' terms are to be staggered, and their successors elected in accordance with the general election law. 75 ILCS 5/4—3.1 (West 1992). Vacancies in the office of trustee are filled by the remaining trustees until the next regular library election is held. 75 ILCS 5/4—4 (West 1992).

The Local Library Act vests the library board with broad powers to control and govern the library. See 75 ILCS 5/4—7, 4—7.1 (West 1992). Among other things, the board is given the following powers: (1) to make and adopt bylaws, rules and regulations for the government of the library; (2) to have exclusive control of the construction of any library buildings; (3) to have exclusive control over the supervision, care and custody of library grounds, rooms or buildings; (4) to purchase or lease real or personal property; (5) to sell or otherwise dispose of any real or personal property; (6) to enter into contracts and take title to property acquired by it for library purposes; (7) to sue and be sued; (8) to invest funds; and (9) to accumulate and set apart unexpended funds as reserve funds. 75 ILCS 5/4—7 (West 1992). In particular, with regard to library personnel, the library board is granted the exclusive authority to appoint and fix the compensation of a qualified librarian, who in turn shall have the authority to hire such other employees as may be necessary, to fix their compensation, and to remove such employees, subject to the approval of the library board. 75 ILCS 5/4—7(7) (West 1992). The Local Library Act also gives the library board the

"exclusive control of the expenditure of all moneys collected for the library." 75 ILCS 5/4—7(2) (West 1992).

The testimony of Bryon Vana, the Village manager, further demonstrates the autonomy enjoyed by the Winfield Public Library. Vana testified that the library has its own board of trustees, which is elected by the public. No library trustees are also Village trustees, and no library employees are also Village employees. The library pays all of its employees' salaries and benefits. The Village provides no benefits to library employees. The library has its own employment policies and the Village is not involved in the hiring, firing or discipline of library employees. Vana also testified that the Village does not review or approve library expenditures.

The provisions of the Local Library Act and the testimony of Bryon Vana demonstrate that the Village has no involvement whatsoever in the " 'hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of' " the library employees. *Orenic*, 127 Ill. 2d at 475, quoting 36 Lab. L.J. at 36. Rather, the library board, which is elected by the public and operates wholly independently of the Village, has exclusive authority in each of these areas. Applying our test for joint employer status, we conclude that the Village may not be considered a joint employer of the library employees.

The appellees nonetheless contend that the Village is a joint employer of the library employees because of the Village's "significant ability to affect library funding." We disagree. It is true, as the appellees assert, that the library does not have the power to levy taxes on its own behalf, but must rely on the Village to levy a tax to fund the library's budget. The library board, however, prepares the library's budget, and the Village's duty to levy a tax to fund that budget is merely ministerial.

Bryon Vana testified that the library board prepares its own budget and passes a resolution for a specific tax levy, which is forwarded to the Village for inclusion in the Village's appropriation. This procedure is consistent with the Local Library Act. The Act clearly contemplates that the library board will determine its own budget. The Act specifically provides that the library board shall have "exclusive control of the expenditure" of library funds. 75 ILCS 5/3—5, 4—7(2) (West 1992). The Act also directs the library board to prepare a statement of the library's financial requirements for the upcoming year and the amount of money which it will be necessary to levy for library purposes, "for inclusion in the appropriation of the [Village]." 75 ILCS 5/4—10 (West 1992). The Act then directs the Village to levy a tax for the library in the amounts determined by the library board. 75 ILCS 5/3—5 (West 1992). Vana's testimony and the Act's provisions demonstrate that the library board alone determines the library's budget. The library's budget encompasses those funds which will pay for the library employees' wages and benefits. The library board therefore has exclusive control over determining the amount of funding required for its personnel needs.

The fact that the Village must levy a tax to fund the library's budget does not diminish the library board's control over the library budget. The pertinent sections of the Local Library Act provide that the Village's role in levying the tax to fund that budget is simply a ministerial duty imposed by statute. Section 3—4 of the Local Library Act provides, in pertinent part:

"When the electors of [a] *** village *** have voted to establish and maintain a public library as provided in Section 2—2, the corporate authorities of such *** village *** *shall* levy an annual tax for the establishment and maintenance of such library, not exceeding .15% of the value as equalized or assessed by the Department of Revenue." (Emphasis added.) 75 ILCS 5/3—4 (West 1992).

In addition, section 3—5 provides, in relevant part:

> "The library taxes provided for in this Act *shall be levied by the corporate authorities in the amounts determined by the [library] board* and collected in like manner with other general taxes of the *** village *** and the proceeds shall be deposited in a special fund, which shall be known as the library fund. *** [T]he proceeds of any such tax shall be paid over by the officer charged with the collection thereof to the board of trustees of the library. Expenditures from the library fund shall be under the direction of the board of library trustees." (Emphasis added.) 75 ILCS 5/3—5 (West 1992).

This court has held that the use of the word "shall" in a statute generally indicates a mandatory obligation. *People v. Thomas*, 171 Ill. 2d 207, 222 (1996). Thus, under sections 3—4 and 3—5 of the Local Library Act, the Village is under a mandatory duty to levy a tax for the establishment and maintenance of the library in the amount determined by the library board.[1] See *Painter v. Board of Trustees*, 161 Ill. App. 3d 26, 32 (1987) (noting that the Local Library Act clearly indicates that a village is under a duty to pass the appropriation and tax levy exactly as requested by the library board); *cf. Chicago School Finance Authority v. City Council*, 104 Ill. 2d 437, 443-44 (1984) (under the School Finance Authority Act, the Chicago city council is under a duty to pass a tax levy ordinance as demanded by the Chicago School Finance Authority). Pursuant to section 4—10 of the Local Library Act, the library must send a copy of its budget and the necessary tax levy to the Village. 75 ILCS 5/4—10 (West 1992). The Act, however, does not grant the Village the power to reject the library's budget or tax levy request. Thus, the Village's role in levying a tax to fund the library's budget is simply a ministerial duty imposed by statute. This ministerial task is not

---

[1] Subject, of course, to the applicable statutory limitations on the amount of the levy.

sufficient to render the Village a joint employer of the library employees.

Parenthetically, we note that the record contains a statement by the Village that it possesses the discretion to disapprove the library's appropriation request. The Village's statement is accompanied by a citation to the appellate court's decision in *People ex rel. Effertz v. Brzezinski*, 91 Ill. App. 2d 202 (1968). *Brzezinski* interpreted the 1965 version of the Local Library Act and held that, under that Act, the corporate authority, and not the library board, had the final approval over the amount of taxes to be levied for the library. The version of section 3—4 interpreted in *Brzezinski*, however, stated that the corporate authorities "*may*" levy an annual tax for the establishment and maintenance of the library. See *Brzezinski*, 91 Ill. App. 2d at 203-04, citing Ill. Rev. Stat. 1965, ch. 81, par. 3—4. In 1967, the legislature amended section 3—4 to read, as it does presently, that the corporate authorities "*shall*" levy an annual tax for the establishment and maintenance of the library. Ill. Rev. Stat. 1967, ch. 81, par. 3—4. Moreover, after the *Brzezinski* decision was handed down in 1968, the legislature in 1969 amended section 3—5 to add the express language that the corporate authorities shall levy a tax for the library "*in the amounts determined by the [library] board.*" (Emphasis added.) Ill. Rev. Stat. 1969, ch. 81, pars. 3—4, 3—5. Thus, under the versions of sections 3—4 and 3—5 applicable here, the Village's duty to levy a tax to fund the library's budget is ministerial rather than discretionary.

The Board concedes in its brief before this court that the library budget does not need Village approval under the Local Library Act. The appellees nonetheless assert that the Village has the ability to affect the library's funding pursuant to two other provisions of the Local Library Act. The appellees cite to a portion of section

3—4 which states that, in addition to the Village's mandatory duty to levy a tax for the establishment and maintenance of the library, the Village:

> "may also levy an additional tax of .02% of the value of all the taxable property in the \*\*\* village \*\*\* for the purchase of sites and buildings, for the construction and equipment of buildings, for the rental of buildings required for library purposes, and for maintenance, repairs and alterations of library buildings and equipment." 75 ILCS 5/3—4 (West 1992).

The appellees also cite section 3—9, which states, in pertinent part:

> "For the purpose of providing money to establish and replenish a local library working cash fund authorized by Section 4—13, corporate authorities shall have the power to levy, upon all the taxable property of a \*\*\* village \*\*\* a tax not to exceed .05% of the value, as equalized or assessed by the Department of Revenue for the year in which the levy is made." 75 ILCS 5/3—9 (West 1992).

The working cash fund referred to by this provision is defined in section 4—13, which provides that a library board may create and maintain a fund for the sole purpose of enabling the library board to have in its funds, at all times, sufficient money to meet demands for ordinary and necessary and committed expenditures. 75 ILCS 5/4—13 (West 1992).

The appellees argue that the Village has discretion over whether to levy the additional taxes provided for in these sections. They assert that the Village therefore has control over the amount of funding the library will receive. On this basis, the appellees argue, the Village should be found to be a joint employer of the library employees. The appellees' reliance on these provisions is misplaced. The taxes provided for in these two sections are expressly designated for the specific purposes described therein, and do not provide the library with the funding it requires to meet its general budgetary or personnel needs. Accordingly, neither of these provi-

sions are relevant to the critical issue in this case, *i.e.*, whether the Village possesses sufficient control over the library's *personnel* that it may be considered to be their joint employer.

The appellees also rely on the appellate court's decision in *City of Rockford v. Illinois State Labor Relations Board*, 158 Ill. App. 3d 166 (1987). That case is clearly distinguishable. In *City of Rockford*, the appellate court held that the City of Rockford was a joint employer of employees of the Rockford library. Although the library in that case was established under the Local Library Act, different provisions of the Act applied because the library was established in a city rather than a village, as here. In contrast to a village library, a city library is governed by a nine-member board of trustees, all of whom are appointed by the mayor with the advice and consent of the city council. 75 ILCS 5/4—1 (West 1992). The mayor also is granted the power to remove any trustee of a city library. 75 ILCS 5/4—1.1 (West 1992). The court in *City of Rockford* found these considerations to be significant in reaching its holding that the city possessed sufficient control over the library to be considered a joint employer of the library employees. The court observed that the library's board of trustees, which had the final approval over who was hired and discharged and total discretion over an employee's hours, wages and working conditions, was appointed by, and could be removed by, the mayor and the city council. *City of Rockford*, 158 Ill. App. 3d at 173. Further, there was evidence in that case that the city's personnel office advertised for, screened and conducted the initial interview of applicants for nonprofessional library positions. Also, the record demonstrated that the city had, in the past, aided the library when it was in financial straits, paying the balance on a mortgage obtained by the library. *City of Rockford*, 158 Ill. App. 3d at 170-71.

We thus do not find the decision in *City of Rockford* to be persuasive authority in this case.

Accordingly, we hold that the Village is not a joint employer of the employees of the Winfield Public Library. The Board's finding to the contrary is against the manifest weight of the evidence. The Village is therefore exempt from the Illinois Public Labor Relations Act because it employs fewer than 35 employees and the Board has no jurisdiction to consider the union's petition. Given this holding, we need not consider the additional argument raised by the Village, that the library is a "unit of local government" such that its employees may not be aggregated with those of the Village. We also do not reach the issue of whether the six summer staffers should be counted as Village employees for section 20(b) purposes.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the appellate court which confirmed the decision and order of the Illinois State Labor Relations Board. Pursuant to section 20(b) of the Illinois Public Labor Relations Act, the Board lacks jurisdiction to consider the union's representation petition, and the Board's order must therefore be set aside.

*Appellate court judgment reversed;*
*Board order set aside.*