HERBERT R. SCHMIDT *et al.*, Plaintiffs-Appellants, v. MILBURN BROTHERS, INC., *et al.*, Defendants-Appellees.

First District (4th Division)  No. 1—97—1353

Opinion filed April 30, 1998.

Clifford Law Offices, of Chicago (Robert A. Clifford, Jeffrey J. Kroll, and Robert P. Sheridan, of counsel), for appellants.

Broderick, Steiger & Zupancic, of Chicago (Kevin M. Weldon, of counsel), for appellees.

JUSTICE WOLFSON delivered the opinion of the court:

The issue in this case is whether Herbert R. Schmidt's personal injury action is barred by the exclusive remedy provision of the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1996)).

To answer the question we are required to determine whether two separate and independent corporations should be regarded as joint employers, or whether the two corporations were engaged in a joint enterprise at the time Schmidt was injured. If the answer to either one of these questions is yes, Schmidt's lawsuit cannot proceed. Because we believe these are issues that should be decided by the trier of fact, we reverse the trial court's grant of summary judgment to the defendants and remand this cause for further proceedings.

BACKGROUND

On June 17, 1992, Herbert R. Schmidt (Schmidt), who was employed by Plote, Inc. (Plote), was driving a tractor-trailer which displayed Plote identifying marks. At the intersection of Route 72 and Bartlett Road in Barrington, Illinois, the traffic light was not working due to stormy weather. Schmidt stopped, then proceeded through the intersection. As he did so, Schmidt's vehicle was struck from behind by a tractor-trailer driven by Eric Agase (Agase). Agase was employed by Milburn Brothers, Inc. (Milburn), and the truck he was driving bore identifying marks indicating it belonged to Milburn.

As a result of the collision, Schmidt's head hit the windshield and he sustained injury to his back and neck. He filed a workers'

compensation claim with Plote and received $102,000 in temporary disability benefits and more than $43,000 in medical benefits, as well as a lump-sum settlement award in excess of $81,000.

On April 16, 1993, Schmidt and his wife, Stellette, filed a negligence action against Milburn and Agase, seeking recovery for damages suffered as a result of the June 17, 1992, collision.

On December 18, 1996, after discovery had been completed, Milburn and Agase (defendants) filed a motion for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure. See 735 ILCS 5/2—1005 (West 1996). In the motion defendants contended Plote and Milburn were two of five individual companies which made up a single enterprise—the "Plote companies family." This Plote family of companies, said defendants, shared the same centralized offices; the trucks owned by the companies were dispatched from the same facility yard; the same mechanics, working at the facility yard, repaired and maintained all of the Plote companies' trucks; and all truck drivers, regardless of the company that paid them, were directed and controlled by the same managerial staff. Based on these and other factors, defendants contended Schmidt and Agase were joint employees of both Plote and Milburn and, for this reason, the exclusive remedy provision in the Workers' Compensation Act (the Act) barred plaintiffs from recovering from Milburn or Agase in the civil negligence action.

On March 10, 1997, the trial court entered an order granting defendants summary judgment. The order does not say why the court granted summary judgment. Though a hearing was held on the motion, no transcript of this hearing is included in the record. We do not know the trial court's reason for granting summary judgment in defendants' favor.

Schmidt and his wife appeal. The only issue is whether the trial court wrongly determined plaintiffs' claims against Milburn and Agase are barred by the exclusive remedy provision in the Act.

Standard of Review

■ An appellate court reviews the grant of summary judgment *de novo*. *Barraza v. Tootsie Roll Industries, Inc.*, 294 Ill. App. 3d 539, 690 N.E.2d 612 (1997). When no genuine issue of fact is present and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Guerino v. Depot Place Partnership*, 273 Ill. App. 3d 27, 652 N.E.2d 410 (1995). Summary judgment should not be granted if reasonable persons could draw divergent inferences from undisputed facts. *Pyne v. Witner*, 129 Ill. 2d 351, 358, 543 N.E.2d 1304 (1989). Summary judgment is a drastic means of disposing of

litigation and should be allowed only when the moving party's right to judgment is clear and free from doubt. *Zekman v. Direct American Marketers, Inc.*, 286 Ill. App. 3d 462, 675 N.E.2d 994 (1997); *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 151, 598 N.E.2d 337 (1992).

## DECISION

Defendants advance two arguments in support of their claim that the exclusive remedy provision of the Workers' Compensation Act (820 ILCS 305/1(a)(4) (West 1996)) bars the Schmidts' lawsuit. They say either contention is sufficient to support summary judgment.

First, defendants contend Plote and Milburn, though legally separate companies, are part of a "single enterprise"—the "Plote family of companies." Thus, Schmidt and Agase were coworkers of this single enterprise. Put another way, Milburn and Plote were joint employers of Schmidt and Agase.

Second, defendants contend both Schmidt and Agase were working for Plote/Milburn joint ventures at the time of the accident, thus barring this negligence action because the liability for Milburn must be, as a matter of law, the same as it is for Plote.

Plaintiffs, of course, disagree with both arguments. Despite the commonalities between the two companies, say plaintiffs, the legal distinction created by the separate corporate structures of Plote, Inc., and Milburn Brothers, Inc., should bar Milburn from claiming immunity under the Act. Plaintiffs also reject the "joint venture" argument because Schmidt and Agase were engaged in *different* joint venture projects at the time of the accident.

We review the undisputed facts.

The "Plote Companies," as listed on the employee manual which is distributed to all new employees, are: (1) Plote, Inc.; (2) Milburn Bros., Inc.; (3) Allied Asphalt, Inc.; (4) Higgins Asphalt, Inc.; and (5) Beverly Gravel, Inc. These five companies are involved in various aspects of construction. Plote specializes in excavation, while Milburn specializes in mixing and pouring concrete.

Though there is obviously some connection among the five "Plote Companies," nothing in the record indicates that a formal affiliation exists. It appears there is a common shareholders' ownership of all the corporations, but there is no "parent" corporation or holding company. "Plote family of companies" has no separate corporate existence.

We do know "Plote, Inc.," and "Milburn Brothers, Inc.," are separately incorporated and listed separately in the Illinois Corporation Book. The two companies have different employer tax identifica-

tion numbers. Both Plote and Milburn have their own employees, whom they pay from separate payrolls. The companies use different letterheads and reporting forms.

The companies share the same corporate officers and are located at the same corporate address. A single trucking facilities yard is maintained, from which all company trucks are dispatched. When hired, a truck driver for any one of the "Plote Companies" receives a "Plote Companies" employee manual. All drivers receive the same training and participate in the same safety meetings.

With regard to the accident that is the basis for the lawsuit, plaintiffs and defendants agree Schmidt was injured when the tractor-trailer he was driving was struck from behind by a tractor-trailer driven by Agase. At the time of the accident, Schmidt was on Plote's payroll and Agase was on Milburn's payroll. Title to the tractor-trailer driven by Schmidt was held by an entity identified as RDD Leasing (located at the same corporate address as the Plote Companies). "Plote, Inc.," however, was listed as owner on the title to the tractor-trailer driven by Agase.

On the day of the accident, Schmidt was assigned to the "Route 72 and Elmhurst" project. Agase was working on the "Medinah Road" project. At about 3:30 p.m., when the accident occurred, both Schmidt and Agase were returning to the company truck facilities yard. Schmidt was hauling a full load of broken concrete, which he picked up from the Route 72 and Elmhurst project. Agase was returning to the yard empty, after having delivered a load of gravel to the Medinah Road project. When bids for these projects were submitted, the Route 72 and Elmhurst project was bid by "Plote, Inc. and Milburn Bros., Inc., a joint venture." The Medinah Road project was bid on by "Plote, Inc., Milburn Bros., Inc., Allied Asphalt, Inc., a joint venture, an Illinois corporation."

Dan Plote, vice president of both Plote and Milburn, gave a deposition. He believed the only distinction between an employee of Plote and an employee of Milburn was the name on the paycheck. The hierarchy of the two companies, he said, is shared. The dispatch schedule for all trucks is completed by Dan Bethke, a Plote employee. Another Plote employee, Jay Kissack, is the "truck boss" (or foreman). Kissack posts the truckers' schedule at the facilities yard office. The safety director and truck supervisor for the entire truck facility yard, however, is William Ryan, an employee of Milburn.

William Ryan also was deposed. He said he became employed by Milburn in 1985. He started out as a driver, moved up to a foreman position, and then, in 1989, became a supervisor. His current position as truck supervisor and safety director requires him to ensure OSHA

regulations are being followed at the jobsites. He also supervises the truck foremen and assists with the dispatch of trucks in the morning. He reports directly to Dan Plote.

Ryan said he supervises all truck drivers, whether they are employed by Milburn or Plote. The drivers receive the same training and are treated the same, even with regard to seniority.

Ryan also said he never was an employee of Plote, Inc., or any other corporation that is part of the "Plote family." He was always paid by Milburn and considered himself a Milburn employee. Schmidt, Ryan said, was and is employed by Plote. Agase was employed by Milburn and was discharged after the accident in accord with "company procedure approved by the union" and part of "progressive discipline." Ryan said he and Jay Kissack (a foreman paid by Plote, Inc.) jointly made the decision to discharge Agase.

It was established by affidavit that all Plote companies were covered by a single workers' compensation insurance policy. The record is silent as to who paid the premiums. It is safe to assume Milburn would have told us it paid all or some of the premiums if that were the fact. A copy of the policy is included in the record, however. It shows the policy was issued by Casualty Insurance Company to "Plote, Inc., Beverly Gravel Co." The "operating entities" listed in the policy are: Plote, Inc.; Beverly Gravel, Inc.; East Riverdale Gravel Co.; Cary Gravel, Inc.; Higgins Asphalt, Inc.; Milburn Brothers, Inc.; Repco Development, Inc.; Allied Asphalt Paving Co., Inc.; Par Development, Inc.; and Fairway Realty, Inc. Additional insureds were: "Allied Asphalt Paving Co., Inc., Plote, Inc., & Milburn Brothers, Inc., a joint venture"; "Plote, Inc., Milburn Brothers, Inc. & Higgins Asphalt, Inc., a joint venture"; and "Plote, Inc., Allied Asphalt, Paving Co., Inc. & Milburn Brothers, Inc., a joint venture."

A. "Single Enterprise" Theory

Plote and Milburn, the defendants say, are actually parts of a single enterprise and Schmidt and Agase were joint employees of this single enterprise. For this reason, both Milburn and Agase would be immunized from suit by the exclusive remedy provision of the Act.

In support of this theory, defendants rely on *Dildine v. Hunt Transportation, Inc.*, 196 Ill. App. 3d 392, 553 N.E.2d 801 (1990). In *Dildine*, plaintiff was injured while he was making repairs on a Happy Cab Company (Happy Cab) automobile. He filed for and received workers' compensation benefits through Happy Cab and then filed a negligence action against Hunt Transportation, Inc. (Hunt), the company that owned the building where Happy Cab housed its garage. Hunt moved to dismiss the complaint.

According to uncontested affidavits filed in *Dildine*, the following facts were established: plaintiff's salary was paid by Happy Cab; Hunt and Happy Cab were both wholly owned subsidiaries of Butler Holding Company, Inc.; Butler filed consolidated tax returns on behalf of Hunt and Happy Cab; Happy Cab was an additional insured on Hunt's workers' compensation insurance policy, which paid plaintiff's claim; Happy Cab did not pay Hunt rent for the use of the garage area; a regional marketing manager for Hunt, who had authority over all operations at the building where the Happy Cab garage was located, had the power to direct plaintiff to work for Hunt whenever necessary; though plaintiff typically repaired Happy Cab automobiles, he also repaired truck trailers, rearranged trailer loads, or drove loaded trucks for Hunt.

Based on the totality of circumstances presented, the *Dildine* court held plaintiff was the "joint employee" of Happy Cab and Hunt and was barred by the exclusive remedy provision in the Act from bringing a common law action against Hunt. To reach the conclusion that plaintiff was a "joint employee," the *Dildine* court considered factors set forth in *Clark v. Industrial Comm'n*, 54 Ill. 2d 311, 297 N.E.2d 154 (1973).

*Clark*, however, was a case in which the court decided whether the plaintiff was an employee or an independent contractor. Application of *Clark* to the circumstances in *Dildine* is problematic. Also, *Dildine* never discussed whether it was appropriate to disregard the separate corporate identities of Happy Cab and Hunt.

■ Our supreme court recently held the test for joint employment is whether two or more employers exert significant control over the same employees. That is, does the evidence show the employers share or codetermine those matters governing essential terms and conditions of employment? *Village of Winfield v. Illinois State Labor Relations Board*, 176 Ill. 2d 54, 60, 678 N.E.2d 1041 (1997). *Winfield* was a bargaining case, decided under the state labor laws, and did not involve two private, independently organized corporations. Still, we see no reason why a trier of fact in any joint employment case cannot consider a "putative joint employer's role in 'hiring and firing, promotions and demotions; setting wages, work hours and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job.'" *Village of Winfield*, 176 Ill. 2d at 60, quoting *Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453, 475, 537 N.E.2d 784 (1989). Of course, in a case such as the one before us, the trier of fact would have to consider the separate corporate existence of each of the purported joint employers.

We have attempted to steer clear of the "borrowed" or "loaned"

employee decisions. Those cases ordinarily deal with the employee's contractual expectations, a matter that is of little import in this case. See *Barraza v. Tootsie Roll Industries, Inc.*, 294 Ill. App. 3d at 545-46, 690 N.E.2d at 615-16.

In *Nutt v. Pierce Waste Oil Service, Inc.*, 112 Ill. App. 3d 612, 615-16, 445 N.E.2d 928 (1983), the court distinguished "joint" employees and "borrowed" employees. A "joint employee" relationship will exist, said the court, "[w]here control of an employee is shared by two employers and both benefit from the work." A "loaned employee" relationship is one where the employee is assigned to perform special services for the borrowing employer and the borrowing employer exercises direction and control over the employee.

In *Freeman v. Augustine's Inc.*, 46 Ill. App. 3d 230, 360 N.E.2d 1245 (1977), cited in *Nutt*, a determining factor between "joint employee" and "borrowed employee" status was who hired the employee and paid the salary. If the employee was not jointly paid, the court seemed to indicate a joint employee relationship did not exist.

The parties in this case do not claim a "loaned" or "borrowed" employee situation existed. This case, therefore, is not about "loaned" or "borrowed" employees. Nor is this a case that seeks to employ the dual capacity doctrine. See *Sharp v. Gallagher*, 95 Ill. 2d 322, 447 N.E.2d 786 (1983); *Goins v. Mercy Center for Health Care Services*, 281 Ill. App. 3d 480, 667 N.E.2d 652 (1996). This is a case where two legally separate corporations seek to cast off their corporate identity and pierce their own corporate veils.

We believe the controlling question for the trier of fact is whether, at the time of the injury, Herbert Schmidt "was engaged in the performance of duties for two employers, pursuant to a joint employment." See *American Stevedores Co. v. Industrial Comm'n*, 408 Ill. 445, 448, 97 N.E.2d 329 (1951) (error to find joint employment in worker's compensation proceedings where injured employee was not rendering service for both corporations when injured).

Plote and Milburn characterize themselves as part of "one, big, happy family" which is the "Plote family of companies." Defendants ask us to shield them from liability by disregarding the separate corporate identities of Plote and Milburn.

■ Milburn and Plote, however, are separate corporations performing separate functions. Presumably, their separate corporate identities produce certain legal benefits. We see no reason to allow Plote and Milburn to organize as individual corporations and then pierce their own corporate veils at their convenience. See *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 172, 632 N.E.2d 1015 (1994) (a corporation should not be allowed to pierce its own

corporate veil for the benefit of the corporation or its shareholders); *Flynn v. Allis Chalmers Corp.*, 262 Ill. App. 3d 136, 140, 634 N.E.2d 8 (1994) (a corporation may not use the fiction of separate corporate existence to frustrate creditors). See also *Volb v. G.E. Capital Corp.*, 139 N.J. 110, 122, 651 A.2d 1002, 1008 (1995) ("in suits brought by an injured employee against corporations that are parents, subsidiaries, or affiliates of the plaintiff's employer, the general rule consistently applied by federal and state courts has been to deny workers' compensation immunity on the ground that the separate corporate identity of affiliated corporations should not be disregarded").

As this court recently held in *Daley v. American Drug Stores, Inc.*, 294 Ill. App. 3d 1024, 691 N.E.2d 846 (1998), even where two corporations are wholly owned by a single parent corporation, the corporations must be deemed separate legal entities unless it is shown "that one corporation is the mere instrumentality or dummy of the other and that, under the circumstances, the observance of the fiction of separate corporate existence will sanction a fraud or injustice."

In the present case there is no dispositive evidence Schmidt was an employee of any corporation other than Plote. He was hired by Plote in 1968 and had been a Plote employee since that time. He was paid by Plote and no one else. Schmidt drove a truck that displayed markings indicating it belonged to Plote. Schmidt performed duties for the benefit of Plote. At the time of the accident Schmidt was hauling concrete, which was Plote's business.

We don't agree *Dildine* requires a finding of "joint employment." *Dildine* is distinguishable. In *Dildine*, the workers' compensation insurance policy was issued to Hunt, the named defendant. Hunt paid the premium. Happy Cab was an additional insured on the policy. Hunt, therefore, was the actual party in interest in plaintiff's workers' compensation claim. In the present case, the workers' compensation insurance policy was issued to "Plote, Inc., Beverly Gravel, Inc." Milburn, along with others, was an additional insured. Milburn, therefore, was not the true party in interest in Schmidt's workers' compensation claim against Plote, Inc. Milburn took no part in the workers' compensation proceeding.

In their brief, Milburn and Agase emphasize the amount of control exercised over Plote employees by Ryan. It is true that Ryan was a high-level supervisor, ranking above the Plote supervisors in the single yard both corporations shared. In addition, Plote and Milburn employees shared washrooms, lunch rooms, and meeting rooms and were given the same employee handbook—the "Plote Companies Employee Manual."

Yet, Plote and Milburn maintained separate and distinct identities. The workers' compensation insurance policy was issued to Plote. Presumably, Plote paid the premium. Plote, not Milburn, defended the workers' compensation action and was responsible for whatever benefits were paid to Schmidt.

We do not believe the degree of control and supervision exercised by Milburn and other joint effort circumstances in this case are enough, as a matter of law, to protect the defendants under the exclusive remedy provision of the Act. The workers' compensation statutory scheme is effective because employers are able to spread the risk of loss. See *Rosales v. Verson Allsteel Press Co.*, 41 Ill. App. 3d 787, 789, 354 N.E.2d 553 (1976). Employers should not have to provide workers' compensation and also have to pay out in common law tort actions. But here, if defendants are right, Milburn pays nothing for the negligence of its driver—no workers' compensation premiums, no workers' compensation benefits, no tort liability. That would turn the exclusive remedy provision of the Act into a sword, instead of a shield. No useful societal purpose would be served. Milburn would receive all the benefits the law provides to a separate and distinct corporate body with none of the usual detriments—tort liability for the negligence of its agent, for instance.

We do not believe this is an appropriate case for a judge to conclude the joint employer theory defeats the plaintiffs' common law action. Because reasonable persons could draw different inferences from the undisputed facts, summary judgment should have been denied. See *Davis v. Pak-Mor Manufacturing Co.*, 284 Ill. App. 3d 214, 220, 672 N.E.2d 771 (1996).

B. "Joint Venture" Theory

■ The second claim made by defendants is that Schmidt and Agase were working on joint ventures which involved both Plote and Milburn. Therefore, say the defendants, the liability of Milburn and Plote is identical and the exclusive province of the Act.

On the day of the accident, Schmidt was assigned to the Route 72 and Elmhurst project and Agase was working on the Medinah Road project. These were two different joint venture projects, each bid on separately. The bid for the Route 72 and Elmhurst project was made by "Plote, Inc. and Milburn Bros., Inc., a joint venture." The Medinah Road project was bid on by "Plote, Inc., Milburn Bros., Inc., Allied Asphalt, Inc., a joint venture, an Illinois corporation." Nothing in the record discloses any relationship between these two projects, except that they both involved Plote and Milburn. The projects appear to be two distinctly different joint ventures.

Defendants rely on *Moran v. Gust K. Newberg/Dugan & Meyers*, 268 Ill. App. 3d 999, 645 N.E.2d 489 (1994), to support their claim of immunity. *Moran* does not control.

In *Moran*, plaintiff was injured when he was working at a baseball stadium construction site. The single construction project was a joint venture between Newberg and Dugan & Meyers. Plaintiff was employed to work on this project and was paid by joint venture funds. Under these circumstances, the court found the liabilities of the joint venture and the members of the joint venture to be co-extensive.

There is no evidence that either Schmidt or Agase was actually employed by the joint ventures, though their employers were co-adventurers. Both Schmidt and Agase were paid by their separate employers, not by joint venture funds. Furthermore, at the time of the accident, Schmidt and Agase were working on different joint ventures. The Schmidts are not bringing their cause of action against Milburn in its capacity as a joint venturer with Plote on the Route 72 and Elmhurst project. Whether the defendants' joint venture theory will ultimately be successful is a matter for the trier of fact to determine.

## CONCLUSION

The trial court order granting defendants summary judgment in their favor is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

CERDA, P.J., and SOUTH, J., concur.