No. 3–06–0399

Filed October 12, 2007.

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| DANIEL IOERGER; RANDY McCOMBS; ROBERT LAMAR FOULKS, as Independent Administrator of the Estate of Robert L. Foulks, Sr., Deceased; and RALPH BILL; CONNIE WATSON, Administrator of the Estate of Ronald Watson, Deceased; and TRACY IRBY, Administrator of the Estate of John Irby, Deceased, | ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court for the 10th Judicial Circuit, Peoria County, Illinois |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 00–L–442 |
| HALVERSON CONSTRUCTION CO., INC., an Illinois Corporation; MIDWEST FOUNDATION CORPORATION/HALVERSON CONSTRUCTION COMPANY, a Joint Venture, | ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) | |
| MICHAEL GRAFTON, Individually and as an Agent of JOB STRATEGIES, INC., a Corporation; HANSON PROFESSIONAL SERVICES, INC., a Delaware Corporation d/b/a Hanson Engineers, Inc.; ARK SYSTEMS, INC., a Corporation; and ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Corporation, | ) ) ) ) ) ) ) ) ) | |
| | ) ) | Honorable Joe Vespa |
| Defendants. | ) | Judge, Presiding |

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiffs Daniel Ioerger, Randy McCombs, Robert Foulks, administrator of the estate of

Robert L. Foulks, Sr., deceased, and Ralph Bill (collectively ironworkers), and other plaintiffs not involved in this appeal, brought this negligence action against defendants Halverson Construction Co., Inc., and Midwest Foundation Corp./Halverson Construction Co., a joint venture, and other defendants not involved in this appeal, for injuries they sustained as a result of the collapse of a scaffold at a bridge repair site. Halverson and the joint venture filed motions for summary judgment, claiming immunity pursuant to the exclusive remedy provision of the Workers' Compensation Act (the Act) (820 ILCS 305/5(a) (West 2000)). The trial court granted the motions for summary judgment and the ironworkers followed with this appeal. We reverse, finding that the exclusive remedy provisions do not apply to either Halverson or the joint venture.

FACTS

In June 1999, defendants Midwest Foundation Corp. and Halverson Construction Co., Inc., formed a joint venture, Midwest Foundation Corp./Halverson Construction Co., in order to place a bid with the Illinois Department of Transportation (IDOT) on the McCluggage Bridge repair project. Midwest and Halverson executed a joint venture agreement which provided that the "the parties hereby agree to constitute themselves as joint venturers for the purpose of submitting joint bids *** for the performance of the construction contracts herein before described, and for the further purpose of performing and completing such construction project." The agreement also provided that the profits and losses and liabilities resulting from the bridge project be shared 60% by Midwest and 40% by Halverson. Pursuant to the agreement, Midwest was fully responsible for:

>"the performance of all labor for the Joint Venture, including
>
>the payment of all payroll, payroll taxes, fringes, and other employee
>
>expenses, including, but not limited to, the establishment of worker's

2

[*sic*] compensation insurance and the payment of all premiums therefore. *** Midwest Foundation Corporation shall be entitled to reimbursement from the Joint Venture for the costs incurred in performing the foregoing obligations; such reimbursement to be paid at such time or times as the Joint Venture shall determine."

After IDOT accepted the joint venture's bid, Halverson and Midwest performed separate duties on the bridge. Midwest paid and supervised the ironworkers, who were employees solely of Midwest. Midwest hired the employees who worked on "Ramp E," the portion of the project that Halverson personnel supervised. The joint venture did not hire or employ any workers. The joint venture did not pay the wages of any workers on the project, including the injured ironworkers. Neither Halverson nor the joint venture paid or contributed to the workers' compensation premiums covering the ironworkers; all premiums were paid by Midwest to Midwest's workers' compensation insurer. Moreover, the parties admitted at oral argument that the joint venture has never reimbursed Midwest for any expenses it incurred on the bridge project.

On April 24, 2000, the ironworkers were at the jobsite, working on a scaffold suspended above the Illinois River when the scaffold collapsed, plunging them into the river below. Ioerger, McCombs and Bill were injured and Foulks was killed. The ironworkers received workers' compensation benefits for the injuries from their employer, Midwest. They subsequently filed this tort action against Halverson and the joint venture. Both Halverson and the joint venture responded with motions for summary judgment, claiming that they were afforded the same immunities from common-law suits as Midwest under section 5(a) of the Act. Halverson argued that it was immune as a member of the joint venture and an agent of both Midwest and the joint venture. The joint

3

venture argued additionally that it was ultimately responsible for the ironworkers' wages and workers' compensation premiums pursuant to the joint venture agreement. The trial court agreed that Halverson and the joint venture were afforded immunity pursuant to section 5(a) and granted their motions for summary judgment. The trial court also granted Halverson and the joint venture's motions to include Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) language. The ironworkers appealed.

ANALYSIS

The issue on appeal is whether the trial court erred when it granted summary judgment in favor of Halverson and the joint venture. The ironworkers argue that the trial court erroneously found that Halverson and the joint venture were afforded immunity under section 5(a) of the Act. They contend that a genuine issue of material fact exists as to whether the exclusive remedy provisions of the Act protect Halverson and the joint venture as co-joint venturers. Specifically, they argue that whether Halverson's status as a co-joint venturer of Midwest bars their tort action is a question of fact; that their status as employees of the joint venture is a question of fact; and that affording Halverson and the joint venture the Act's immunity would frustrate the purpose of the Act.

Summary judgment should be granted only when "the pleadings, depositions, admissions on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005( c) (West 2004); Bokodi v. Foster Wheeler Robbins, Inc., 312 Ill. App. 3d 1051, 1057, 728 N.E.2d 726, 730-31 (2000). "The purpose of summary judgment is not to try a question of fact but *** to determine whether one exists." Forsythe v. Clark USA, Inc., 224 Ill. 2d 274, 280, 864 N.E.2d 227, 232 (2007). Summary judgment is a drastic measure which should only be granted with great caution and when

4

the movant's right to it is clear and free from doubt. Forsythe, 224 Ill. 2d at 280, 864 N.E.2d at 232. When ruling on a motion for summary judgment, the court must construe all evidence and draw all reasonable inferences in favor of the nonmoving party and strictly against the movant. Bokodi, 312 Ill. App. 3d at 1057, 728 N.E.2d at 731. This court reviews a trial court's grant of summary judgment *de novo*. Bokodi, 312 Ill. App. 3d at 1057, 728 N.E.2d at 731.

The Workers' Compensation Act establishes a system of liability without fault by which the employer exchanges traditional common-law defenses for the prohibition of common-law suits against it. 820 ILCS 305/1 *et seq*. (West 2004); Forsythe, 224 Ill. 2d at 295, 864 N.E.2d at 240. The purpose of workers' compensation is to place upon the industry the costs of industrial accidents. Meerbrey v. Marshall Field & Co., 139 Ill. 2d 455, 469, 564 N.E.2d 1222, 1229 (1990). The Act bars all suits for personal injuries that arise out of and in the course of employment. Mier v. Staley, 28 Ill. App. 3d 373, 381, 329 N.E.2d 1, 8 (1975). Employers should not be required to provide workers' compensation and also pay out in common-law actions. Schmidt v. Milburn Brothers, Inc., 296 Ill. App. 3d 260, 269, 694 N.E.2d 624, 629 (1998).

Section 5(a) of the Act states:

> "No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any

employee who is covered by the provisions of this Act *** [or] the legal representatives of his estate ***." 820 ILCS 305/5(a) (West 2004).

The trial court relied on Moran v. Gust K. Newberg/Dugan & Meyers, 268 Ill. App. 3d 999, 645 N.E.2d 489 (1994), in concluding that Halverson and the joint venture were afforded immunity as a member of a joint venture and as the joint venture itself. In Moran, the plaintiff argued, *inter alia*, that there were disputed issues of fact regarding who employed him and whether there was an agency relationship between his claimed employer and the joint venture. Moran, 268 Ill. App. 3d at 1004, 645 N.E.2d at 492. The facts were in dispute as to who employed the plaintiff. Moran, 268 Ill. App. 3d at 1001-2, 645 N.E.2d at 490-91. The court concluded, however, that its analysis was not altered by whether the plaintiff was employed by a member of the joint venture or the joint venture itself. Moran, 268 Ill. App. 3d at 1005, 645 N.E.2d at 494. The court found that the joint venture and its members, as agents of each other, have coextensive liabilities. Moran, 268 Ill. App. 3d at 1005, 645 N.E.2d at 494. The Moran court held that the liabilities of defendants were the same as the liability of the plaintiff's alleged employer and found that the tort claims against them were barred under section 5(a). Moran, 268 Ill. App. 3d at 1005-6, 645 N.E.2d at 494.

In reaching that conclusion, the Moran court relied on Smith v. Metropolitan Sanitary District of Greater Chicago, 77 Ill. 2d 313, 396 N.E.2d 524 (1979). The plaintiff in Smith was employed by the joint venture. Smith, 77 Ill. 2d at 316, 396 N.E.2d at 526. After he was injured on the jobsite, he filed actions against various parties, including defendant, a member of the joint venture, which argued that the plaintiff's claim against it was barred by section 5(a). Smith, 77 Ill. 2d at 316, 396 N.E.2d at 526. The defendant asserted that as a member of the joint venture, it was liable for the

6

payment of the plaintiff's workers' compensation benefits and thus entitled to the Act's protection. Smith, 77 Ill. 2d at 317, 396 N.E.2d at 526. It further asserted that it was entitled to immunity as an agent of the joint venture. Smith, 77 Ill. 2d at 317, 396 N.E.2d at 526-27. The Smith court agreed and applied section 5(a) to bar the plaintiff's claim against the defendant as a joint venture member. Smith, 77 Ill. 2d at 318, 396 N.E.2d at 527. Looking to partnership law, the court found that members of a joint venture are agents of the joint venture and that, as an agent, a member's liability would be coextensive with its principal, the joint venture. Smith, 77 Ill. 2d at 318, 396 N.E.2d at 527. Accordingly, the court held that because the joint venture was immune under section 5(a) as the plaintiff's employer, his claim against the defendant as a member of the joint venture was also barred. Smith, 77 Ill. 2d at 318, 396 N.E.2d at 527.

As interpreted by Moran, Smith instructs that in the context of a joint venture, the statutory protection under section 5(a) is a question of legal status such that if a joint venture exists, the joint venture itself and all of its members are entitled to section 5(a) immunity. Moran, 268 Ill. App. 3d at 1006, 645 N.E.2d at 494. In our view, in using Smith as the basis for its conclusion, the Moran court neglected to carry its analysis far enough. We note that the defendant in Smith argued that it was afforded protection under the Act because it had corresponding obligations, such as liability for the plaintiff's workers' compensation benefits. Smith, 77 Ill. 2d at 317, 396 N.E.2d at 526. While the Smith court did not discuss the defendant's specific workers' compensation obligations, it did reason that, based on partnership principles, the defendant's duty to the plaintiff and any liability for a breach of that duty would be coextensive with that of the joint venture. Smith, 77 Ill. 2d at 318, 396 N.E.2d at 527. The Smith court thus focused on the defendant's worker's compensation obligations in determining whether it was subject to the Act's immunity. This extended analysis is

7

supported by the decisions in Schmidt v. Milburn Brothers, Inc., 296 Ill. App. 3d 260, 694 N.E.2d 624 (1998), and Forsythe v. Clark USA, Inc., 224 Ill. 2d 274, 864 N.E.2d 227 (2007).

In Schmidt, the plaintiff was injured when the truck he was driving was hit by a truck driven by the defendant. Schmidt, 296 Ill. App. 3d at 261, 694 N.E.2d at 625. Both the plaintiff and the individual defendant were separately employed by companies that were part of a "family" of companies. Schmidt, 296 Ill. App. 3d at 262, 694 N.E.2d at 625. The defendant's employer was also a defendant in the action. Schmidt, 296 Ill. App. 3d at 262, 694 N.E.2d at 625. At the time of the accident, the men were working on different joint venture projects. Schmidt, 296 Ill. App. 3d at 269, 694 N.E.2d at 630. The defendants argued that they were joint employers of both drivers and members of the companies' joint ventures and thus were immune from tort liability. Schmidt, 296 Ill. App. 3d at 265, 694 N.E.2d at 627. Expanding on the analysis set forth in Moran, the Schmidt court inquired further to determine whether, in the context of a joint venture, the defendants seeking section 5(a) immunity bore any of the responsibility for providing workers' compensation benefits to the injured employee. Schmidt, 296 Ill. App. 3d at 269-270, 694 N.E.2d at 629-30. The record indicated that the "family" of companies were covered by a single workers' compensation policy but did not establish who paid the premiums. Schmidt, 296 Ill. App. 3d at 265, 694 N.E.2d at 627. The court assumed that had the defendant company paid or contributed to the premiums, it would have so stated. Schmidt, 296 Ill. App. 3d at 265, 694 N.E.2d at 627. The Schmidt court reasoned that to afford the defendants immunity without any corresponding obligation in securing and paying for workers' compensation insurance would be contrary to the purpose of the Act. Schmidt, 296 Ill. App. 3d at 269, 694 N.E.2d at 629-30. It thus reversed the grants of summary judgment and held that whether the defendants were entitled to immunity as joint venturers was a matter for the trier

of fact to determine. <u>Schmidt</u>, 296 Ill. App. 3d at 270, 694 N.E.2d at 630.

In <u>Forsythe</u>, the plaintiffs filed actions against their decedents' employer and its parent company. <u>Forsythe</u>, 224 Ill 2d at 277, 864 N.E.2d at 230. One of the issues before the court was whether, under a theory of direct participant liability, section 5(a) immunizes the parent company. <u>Forsythe</u>, 224 Ill 2d at 277-78, 864 N.E.2d at 230-31. The court determined that it did not, agreeing with the <u>Schmidt</u> analysis that a party which did not bear the costs of providing workers' compensation was not entitled to the Act's immunity. <u>Forsythe</u>, 224 Ill 2d at 298, 864 N.E.2d at 242. Noting that the parent company did not employ the decedents or pay the workers' compensation benefits to their families, the court found that the parent company was not entitled to protection under the Act and held that it was not immunized under section 5(a). <u>Forsythe</u>, 224 Ill 2d at 298, 864 N.E.2d at 242.

In our view, the extended analysis employed in <u>Smith</u>, <u>Schmidt</u> and <u>Forsythe</u> is more attuned to the purpose of section 5(a)'s grant of immunity. The analysis set forth in <u>Moran</u>, that a finding that a joint venture exists affords immunity to the joint venture and all its members, is contrary to the reason for immunity. There is no question that an employer should not have to pay workers compensation and also have to pay out in tort actions. Conversely, a joint venture or one of its members should not enjoy the Act's immunity without bearing some of the corresponding obligations. We agree with the rationale in <u>Smith</u>, <u>Schmidt</u> and <u>Forsythe</u> that the immunity should serve to protect those who bear the burden of providing benefits.

The question for our determination in the instant case thus becomes whether Halverson and the joint venture bore any responsibility for providing workers' compensation for the ironworkers. Based on our review of the record, we find that they did not. First, we note that there is no question

9

that a joint venture existed under the instant facts. There is also no dispute that the ironworkers were employees of Midwest, not the joint venture. Midwest hired and paid the employees, directed and controlled their work, and provided workers' compensation benefits for their injuries. Contrary to the terms of the joint venture agreement, neither Halverson nor the joint venture reimbursed Midwest for the wages it paid to the ironworkers prior to the injuries in this case. Neither Halverson nor the joint venture contributed to the payment of workers' compensation premiums or reimbursed Midwest for its payment of them before the accident. Indeed, at the time of oral arguments, months/years later, it was admitted that they had not reimbursed Midwest for any expenses associated with the joint venture.

We believe that it would be bad public policy to allow Halverson and/or the joint venture, at this point, to now deliver or postdate a check to Midwest for reimbursement of wages and workers' compensation premiums to fulfill its obligations under the joint venture agreement in order to obtain the protection of the Act's immunity. The mere fact that Halverson and Midwest were co-joint venturers and part of the joint venture does not, in our view, provide them immunity under section 5(a). In order to enjoy the Act's immunity, they must also undertake its obligations.

We thus hold that Halverson and the joint venture are not entitled to the immunity under section 5(a) of the Act because they did not bear any responsibility for providing workers' compensation. To hold otherwise would allow Halverson and the joint venture to reap the benefits of the Act without incurring any of the corresponding detriments. We acknowledge that our decision contradicts the holding in <u>Moran</u>. However, in our opinion, the <u>Moran</u> court failed to focus on the defendant's workers' compensation obligations as illustrated in <u>Smith</u>. Moreover, the analysis put

10

forth in Moran has been diminished by the subsequent cases of Schmidt and Forsythe, each of which employs an expanded analysis that is more aptly aligned with the Smith decision as well as the purposes of the Act's grant of immunity.

We disagree with the dissent that this cause should be remanded for a determination as to whether Halverson and the joint venture actually bore any responsibility for providing workers' compensation benefits to the ironworkers. In our view, had Halverson or the joint venture any evidence that they contributed to or bore any obligations for providing workers' compensation, they would have presented it to the court. Therefore, remand is not necessary. Accordingly, we find that the trial court's grants of summary judgment to Halverson and the joint venture should be reversed and this cause remanded for further proceedings consistent with this order.

For the foregoing reasons, the judgment of the circuit court of Peoria County is reversed and this cause is remanded.

Reversed and remanded.

WRIGHT, J., concurs.

JUSTICE CARTER concurring in part and dissenting in part:

I agree with the majority's conclusion that the trial court erred in granting summary judgment in favor of Halverson and the joint venture (collectively referred to as defendants). I dissent, however, because I believe that the majority's ruling goes too far. In my opinion, a material issue of fact remains as to whether defendants bore any of the responsibility of providing workers' compensation benefits to plaintiffs. I would remand this case for a determination of that material issue of fact.

When the trial court ruled upon this case, the application of the exclusive remedy provision

11

in the area of joint venture was largely a question of legal status. See Moran v. Gust K. Newberg/Dugan & Meyers, 268 Ill. App. 3d 999, 1006, 645 N.E.2d 489, 494 (1994). If the parties had the legal status of joint venture, the joint venture itself and all members of the joint venture were entitled to the statutory protection. See Moran, 268 Ill. App. 3d at 1006, 645 N.E.2d at 494. The trial court was bound to follow those legal principles. See People v. Harris, 123 Ill. 2d 113, 128, 526 N.E.2d 335, 340 (1988) (decisions of an appellate court are binding precedent on all circuit courts regardless of locale). Thus, when the parties litigated the matter before the trial court, the evidence presented was for the sole purpose of showing whether a joint venture existed. The supreme court's ruling in Forsythe v. Clark USA, Inc., 224 Ill. 2d 274, 298, 864 N.E.2d 227, 241-42 (2007), changed the analysis in this area. A court, ruling upon this issue, must now look beyond the existence of the legal status of joint venture and inquire whether the party seeking the protection of the act has bore some of the responsibility of providing workers' compensation benefits. See Forsythe, 224 Ill. 2d at 298, 864 N.E.2d at 241-42.

As the majority notes, defendants admitted at oral argument that they had not reimbursed Midwest for the costs associated with providing workers' compensation benefits for the project. However, it cannot be determined from this record whether the project has been completed or whether there are any gross profits from which to reimburse Midwest. Furthermore, the joint venture agreement is ambiguous as to how and when a reimbursement will take place. No evidence was presented on this issue in the trial court, because as noted above, the trial court's only focus was on whether the legal status of joint venture existed. Instead of giving the parties an opportunity to litigate that issue of material fact before the trial court, the majority resolves the issue and finds that defendants bore none of the responsibility of providing workers' compensation benefits to the

plaintiffs. That determination goes beyond our role here and should be left to the trial court. Even if either one of the defendants or both are not entitled to the protection of the exclusive remedy provision, there are possibly other potential issues. For example, whether there is a right of contribution from Midwest, whether Midwest has waived the protection of the exclusive remedy provision, and whether the Construction Contract Indemnification for Negligence Act (740 ILCS 35/0.01 et seq. (West 2006)) has any impact on the analysis. See Virginia Surety Co. v. Northern Insurance Co. of New York, 224 Ill.2d 550, 866 N.E.2d 149 (2007).

In addition, I believe that there is a procedural flaw with the majority's ruling. Defendants moved for summary judgment on the issue of whether the exclusive remedy provisions of the Act preclude plaintiffs' common law tort action. Plaintiffs did not file a cross motion for summary judgment on that issue. Instead, plaintiffs have argued throughout the proceedings that material issues of fact prevent a grant of summary judgment. The majority's ruling merely establishes that at this time, it is not clear as a matter of law that defendants are entitled to judgment on that issue. Contrary to the majority's further assertion, defendants may still present evidence on that issue and obtain judgment on that issue after a trial. This is no different than when a defendant in a personal injury action files a motion for summary judgment alleging that he or she is not the proximate cause of the plaintiff's injuries. A denial of that motion does not prevent the defendant from litigating and obtaining judgment on that issue after a trial.

For the foregoing reasons, I respectfully concur in part and dissent in part.

13