Docket No. 99111–Agenda 16–May 2005.

NANCY P. ANDREWS 
et al
., Appellants, v. KOWA PRINTING CORPORATION 
et al
., Appellees.

Opinion filed October 20, 2005.

CHIEF JUSTICE THOMAS delivered the opinion of the court:

Plaintiffs, 35 former union employees of Kowa Printing Corporation, brought an action under the Illinois Wage Payment and Collection Act (the Wage Act) (820 ILCS 115/1 
et seq
. (West 2004)) against defendants, Kowa Printing Corporation, Thomas W. Kowa, and Huston-Patterson Corporation. Plaintiffs alleged that they were owed unpaid vacation time and severance pay and that all three defendants were jointly liable for the amounts owed, as all three fell within the Wage Act’s definition of “employer.” See 820 ILCS 115/2 (West 2002). The circuit court of Vermilion County agreed with plaintiffs and entered judgment against defendants. Defendants appealed, and the appellate court reversed the trial court’s judgment as to Thomas Kowa and Huston-Patterson, holding that neither one was plaintiffs’ employer for purposes of the Wage Act. 351 Ill. App. 3d 668. We granted plaintiffs’ petition for leave to appeal. 177 Ill. 2d R. 315(a).

BACKGROUND

Thomas Kowa owned 100% of Kowa Printing Corporation, a commercial printing firm located in Danville, and 97% of Huston-Patterson Corporation, a commercial printing firm located in Decatur. Both of these firms operated under a common service mark, “The Kowa Group,” and Thomas Kowa was the sole officer and sole director of both firms. The two firms were distinct corporate entities that were formed at different times and performed separate printing services. In addition, the two firms had separate employees, separate management, separate bank accounts, separate collective-bargaining agreements, and separate retirement plans. That said, the two firms regularly marketed each other’s services, and Huston-Patterson provided substantial administrative support to Kowa Printing, including payroll, purchasing, and accounting services.

In 1996, it was discovered that Kowa Printing’s accountant, an employee of Huston-Patterson, had embezzled over $500,000 from Kowa Printing, leaving Kowa Printing in dire financial straits. At that time, Kowa Printing’s only secured creditor was BankIllinois. On April 9, 1997, BankIllinois notified Kowa Printing that it was in default of its loans. The parties entered into negotiations and eventually executed a forbearance agreement. Under the agreement, BankIllinois gave Kowa Printing until November 1, 1997, to satisfy its liabilities. In exchange, Thomas Kowa agreed to personally guarantee all of Kowa Printing’s loans. The parties later extended the deadline for repayment to March 15, 1998. According to Thomas Kowa, the purpose of the forbearance agreement was “to allow the corporation time to find a buyer, to try to save all the jobs and the money that was involved, and get appraisals of the equipment, get the company in as good a position for a seller as possible.” On March 13, 1998, Thomas Kowa executed a surrender agreement, which allowed for the peaceful surrender of Kowa Printing’s assets in the event of foreclosure.

In early1998, Thomas Kowa located a buyer who entered into a written agreement to purchase Kowa Printing. As a condition of the purchase, the buyer required certain concessions concerning the accrued vacation time of Kowa Printing’s employees. As of April 15, 1998, the buyer was still negotiating with plaintiff’s union, and BankIllinois had not yet foreclosed. That same day, plaintiffs’ union voted to reject the buyer’s first proposal. The buyer quickly offered a new proposal, under which the new company would honor all of Kowa Printing’s existing obligations to plaintiffs, with one exception: the new company would unconditionally honor only two-thirds of plaintiffs’ accrued vacation time, with the remaining third contingent upon the new company showing a pretax profit of at least $300,000 in its first year. On April 16, 1998, the union rejected that proposal, as well. A few hours later, BankIllinois foreclosed on the loans, seized the Kowa Printing facility, and sent plaintiffs home. From that point forward, neither Thomas Kowa nor Huston-Patterson had access to Kowa Printing’s assets or accounts. The parties stipulate that plaintiffs never received their final vacation and severance pay.

Following the foreclosure, plaintiffs filed a complaint alleging that Kowa Printing, Thomas Kowa, and Huston-Patterson were plaintiffs’ employers, as defined by the Wage Act, and that all three had violated section 5 of the Wage Act, which requires every employer to “pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee.” 820 ILCS 115/5 (West 2002). Following a bench trial, the trial court ruled in plaintiffs’ favor and entered judgment against all three defendants. Defendants appealed, and the appellate court reversed the portion of the judgment holding Thomas Kowa and Huston-Patterson liable for the unpaid vacation and severance pay. 351 Ill. App. 3d 668. This appeal followed.

DISCUSSION

In this appeal, we must decide whether Thomas Kowa and Huston-Patterson qualify as plaintiffs’ “employer,” as that term is defined in the Wage Act. This is a question of statutory interpretation, and the principles governing our inquiry are familiar. The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. 
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 503-04 (2000). Accordingly, courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature’s apparent objective in enacting it. 
People v. Davis
, 199 Ill. 2d 130, 135 (2002). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning.
 Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 479 (1994). Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. 
Davis v. Toshiba Machine Co., America
, 186 Ill. 2d 181, 184-85 (1999). The construction of a statute is a question of law that is reviewed 
de novo
. 
In re Estate of Dierkes
, 191 Ill. 2d 326, 330 (2000).

Section 5 of the Wage Act provides that “[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee.” 820 ILCS 115/5 (West 2002). In this case, no one disputes that plaintiffs are still owed unpaid vacation and severance pay and that Kowa Printing, as plaintiffs’ employer, is liable for the amounts owed. The issue is whether Thomas Kowa and Huston-Patterson are likewise liable. To resolve this issue, we must decide whether Thomas Kowa and Huston-Patterson were, along with Kowa Printing, plaintiffs’ “employer,” as that term is defined by the Wage Act.

The Wage Act defines the term “employer” in two different places. Section 2 of the Wage Act states that, “[a]s used in [the Wage Act], the term ‘employer’ shall include any individual, partnership, association, corporation, business trust ***, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed.” 820 ILCS 115/2 (West 2002). Section 13, in turn, states that “any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.” 820 ILCS 115/13 (West 2002).

We begin our analysis with section 2, which states that “any person *** acting directly or indirectly in the interest of an employer in relation to an employee” is deemed an “employer” for purposes of the Wage Act. 820 ILCS 115/2 (West 2002). The breadth of this language is confounding, to say the least. Read literally, section 2 would make an “employer” out of every person who possesses even a modicum of authority over another employee, from the CEO to the head of the maintenance staff, as such persons undeniably act “directly or indirectly in the interest of an employer in relation to an employee.” This cannot be, however, as such a reading would render other provisions of the Wage Act utterly absurd. Section 3, for example, states that “[e]very employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period.” 820 ILCS 115/3 (West 2004). Similarly, section 5 requires every “employer” to “pay the final compensation of separated employees in full, at the time of separation.” 820 ILCS 115/5 (West 2004). Notably, both of these duties are strict, with no consideration given to the purported employer’s ability to effectuate compliance. Given our obligation to presume that the legislature did not intend to produce absurd or unjust results (
Eastman v. Messner
, 188 Ill. 2d 404, 414 (1999)), we refuse to believe that, in drafting section 2, the legislature set out to make every supervisory employee strictly and personally liable for the payment of his or her subordinates’ wages.
(footnote: 1) This, however, would be precisely the outcome were we to read section 2’s definition of “employer” literally. We therefore reject such a reading.

Instead, we endorse the approach taken by the United States Court of Appeals for the First Circuit in 
Donovan v. Agnew
, 712 F.2d 1509 (1st Cir. 1983), one of the principle authorities cited by plaintiffs. In 
Agnew
, the court was asked to construe section 203(d) of the Fair Labor Standards Act (FLSA) (29 U.S.C. §203(d) (1988)), which defines “employer” in terms very similar to the Wage Act.
(footnote: 2) The 
Donovan
 court began by explaining:

“[We do not] think too much weight can be put on the Act's broadly inclusive definition of ‘employer.’ Taken literally and applied in this context it would make any supervisory employee, even those without any control over the corporation's payroll, personally liable for the unpaid or deficient wages of other employees. It makes more sense, as appellants argue, to interpret that language as intended to prevent employers from shielding themselves from responsibility for the acts of their agents.” 
Donovan
, 712 F.2d at 1513.

This analysis makes perfect sense. Section 2’s definition describes not only who 
is 
the employer (“any individual, partnership, association, corporation, business trust *** for which one or more persons is gainfully employed”) but also who may 
inculpate
 the employer (“any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee”). In other words, section 2 simply confirms that an employer is liable not only for its 
own
 violations of the Wage Act but also for any Wage Act violations committed by its agents.

That leaves us with section 13, which states that “[a]ny officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.” 820 ILCS 115/13 (West 2002). Clearly, it is this section, and 
not
 section 2, that defines who, other than the employer itself, may be treated as an “employer” for purposes of the Wage Act. Indeed, when considered together, section 2 and section 13 form a coherent and entirely sensible policy. Section 2 confirms that an employer is liable both for its own violations of the Wage Act and for any Wage Act violations committed by its agents. Section 13, in turn, imposes personal liability on any officers or agents who knowingly permitted the Wage Act violation. Unlike a literal reading of section 2, which imposes strict Wage Act liability upon all supervisory employees, this reading reserves personal Wage Act liability for those individual decision makers who knowingly permitted the Wage Act violation. We are confident that this reading of the Wage Act better vindicates the General Assembly’s policy objectives.

We note that our reading of section 2 does more than avoid a patently absurd result. It also avoids rendering section 13 wholly superfluous, which is an equally laudable goal when construing an act of the legislature. See 
Stroger v. Regional Transportation Authority
, 201 Ill. 2d 508, 524 (2002) (a “statute should be construed as a whole and, if possible, in a manner such that no term is rendered meaningless or superfluous.”) If section 2 truly makes an “employer” out of every person who acts “directly or indirectly in the interest of an employer in relation to an employee,” then section 13 is unnecessary. This is because any officer or agent with the authority to effectuate compliance (or noncompliance) with the Wage Act is, by definition, a person who acts “directly or indirectly in the interest of an employer in relation to an employee.” Thus, these people would already be classified as “employers” under section 2, and there would be no need to classify them as such again in section 13. For this reason as well, we elect to construe section 2 narrowly and in tandem with section 13.

In reaching this result, we reject plaintiffs’ invitation to adopt the “economic realities” test, which the federal courts use when determining who qualifies as an “employer” under the FLSA. The purpose of the economic realities test is to identify the parties actually responsible for the FLSA violation, “without obfuscation by legal fictions applicable in other contexts.” 
Dole v. Simpson
, 784 F. Supp. 538, 545 (S.D. Ind. 1991). Stated differently, the economic reality test “focuse[s] on the role played by the corporate officers in causing the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits.” 
Baystate Alternative Staffing, Inc. v. Herman
, 163 F.3d 668, 678 (1st Cir. 1998). Under this test, a corporate officer with operational control of a corporation’s covered enterprise is treated, along with the corporation itself, as an “employer” for purposes of the FLSA. Personal liability under the FLSA is typically found where the officer in question (1) holds a significant ownership interest in the corporation; (2) exercises operation control over significant aspects of the corporation’s day-to-functions, including the compensation of employees; and (3) personally made the decision to continue operations despite financial adversity during the period of nonpayment. See, 
e.g.
, 
Dole v. Elliot Travel & Tours, Inc.
, 942 F.2d 962, 966 (6th Cir. 1991); 
Donovan v. Grim Hotel Co.
, 747 F.2d 966, 972 (5th Cir. 1984); 
Agnew
, 712 F.2d at 1514.

Our rejection of the economic realties test in no way reflects our dissatisfaction with the test as a matter of policy. We reject the test for the simple reason that it is a tool of statutory construction that, while warranted by the FLSA, is unnecessary under the Wage Act. While there is no denying that the two statutes share nearly identical definitions of “employer,” there is also one critical difference–namely, section 13. Section 13 of the Wage Act states that “[a]ny officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.” 820 ILCS 115/13 (West 2002). No analogous provision exists in the FLSA. This difference is crucial because, to the extent that the federal courts have devised analytical tools for determining who may be held liable personally as an “employer” under the FLSA, it is because the FLSA does not say. As the United States Supreme Court explained:

“
[T]here is in the Fair Labor Standards Act no definition that solves problems as to the limits of the employer-employee relationship under the Act. 
*** The definition of ‘employ’ is broad. *** ‘This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships which, prior to this Act, were not deemed to fall within the employer-employee category.’ ” (Emphasis added.) 
Rutherford Food Corp. v. McComb
, 331 U.S. 722, 728-29, 91 L. Ed. 1772, 1777-78, 67 S. Ct. 1473, 1475-76 (1947), quoting 
Walling v. Portland Terminal Co.
, 330 U.S. 148, 150-51, 91 L. Ed. 809, 812, 67 S. Ct. 639, 640 (1947).

To solve this problem, and taking into account the remedial context of the FLSA, the federal courts crafted the economic realities test. See 
Agnew
, 712 F.2d at 1513.

No such deficiency exists in the Wage Act. Section 13 of the Wage Act plainly states that “[a]ny officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.” 820 ILCS 115/13 (West 2002). Thus, unlike the FLSA, the Wage Act 
does
 contain a definition that “solves problems as to the limits of the employer-employee relationship under the Act.” Liability under the Wage Act can be imposed upon employers, as that term is traditionally understood, and upon any officers of a corporation or agents of an employer who knowingly permitted the Wage Act violation. And because the Wage Act, unlike the FLSA, clearly spells out who may be held liable and under what circumstances, there is no need for application of the “economic realities” test.

Turning now to the facts at hand, we are convinced that neither Thomas Kowa nor Huston-Patterson qualify as plaintiffs’ “employer”under the Wage Act. Looking first at Thomas Kowa, we find no evidence in the record that Thomas Kowa knowingly permitted the unlawful withholding of plaintiffs’ severance and accrued vacation pay. On the contrary, the relevant evidence shows that, as long as Thomas Kowa was in control of Kowa Printing and its accounts, plaintiffs were paid on time and in full, even at the expense of other Kowa Printing creditors. As importantly, the specific Wage Act violation alleged in this case did not occur until 
after
 Thomas Kowa lost control of the business. Plaintiffs allege that Thomas Kowa violated Section 5 of the Wage Act by permitting the unlawful withholding of their accrued vacation and severance pay. Section 5, however, provides that an employee’s final compensation is payable “at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee.” 820 ILCS 115/5 (West 2004). At the time of plaintiffs’ separation from Kowa Printing, Thomas Kowa was no longer in control of Kowa Printing. Plaintiffs’ employment was terminated on April 16, 1998, 
after
 BankIllinois seized Kowa Printing and all of its assets. At this point, BankIllinois was calling the shots, and a violation of section 5 simply was not within Thomas Kowa’s ability to permit, knowingly or otherwise.

Plaintiffs nevertheless insist that “the record is replete with evidence showing that [Thomas] Kowa acted knowingly or wilfully.” In support, plaintiffs suggest that Thomas Kowa (1) knew of the company’s “impending demise” at least one year before the asset seizure; (2) allowed his employees to continue working during the one-year forbearance period “despite the likelihood that they would not be paid for some of that work;” and (3) signed the March 13, 1998, surrender agreement “[knowing] Kowa Printing’s assets were about to be seized and the plant closed.” With respect to plaintiffs, we find nothing in the record to suggest that either the demise of Kowa Printing or the loss of plaintiffs’ jobs was inevitable. Rather, the evidence shows that, upon receiving the April 9, 1997, default notice, Thomas Kowa immediately negotiated a forbearance agreement “to allow the corporation time to find a buyer, to try to save all the jobs.” Within the forbearance period, Thomas Kowa located a buyer who was willing both to continue operations and to retain plaintiffs under their existing terms of employment, provided a compromise could be reached concerning plaintiffs’ accrued vacation time. On the day of foreclosure, the buyer and plaintiffs’ union were one concession away from a deal that would secure both the company’s future and plaintiffs’ continued employment. If an agreement had been reached, operations would have continued, plaintiffs would have kept their jobs, and this case never would have been filed. And once negotiations broke down, it was too late for Thomas Kowa to do anything, as BankIllinois immediately moved in and seized all of Kowa Printing’s assets. Nothing in this story supports the inference that Thomas Kowa knowingly set out to deprive plaintiffs of their accrued vacation and severance pay. If anything, the evidence suggests that Thomas Kowa made every effort to ensure that plaintiffs’ livelihoods survived Kowa Printing’s unexpected financial downturn.

As for Huston-Patterson, plaintiffs argue that, “[u]nder section 2 of the Wage Act, Huston-Patterson may be deemed plaintiffs’ employer either because it acted directly or indirectly in the interest of Kowa Printing in relation to the plaintiffs, or, alternatively, and by analogy to the FLSA, by virtue of its status as plaintiffs’ joint employer.” We can quickly dispose of the first of these arguments, as we now know that section 2 does not make employers out of persons who “act directly or indirectly in the interest of an employer in relation to an employee.” Rather, section 2 simply confirms that an employer is liable for both its own Wage Act violations and those of its agents. Thus, even if plaintiffs are correct in asserting that Huston-Patterson acted in Kowa Printing’s interest in relation to plaintiffs, the consequence would not be Wage Act liability for Huston-Patterson; it would be Wage Act liability for Kowa Printing.

In the alternative, plaintiffs argue that Huston-Patterson should be held liable under the Wage Act because it operated as plaintiffs’ “joint employer.” In support of this argument, plaintiffs rely exclusively upon a single regulation issued the United States Department of Labor. See 29 C.F.R. §791.2 (2005). Indeed, plaintiffs maintain that “[Huston-Patterson’s] liability in this case 
is premised upon 
those factors outlined in 29 C.F.R. §791.2(b)(2), (3).” (Emphasis added.) Titled “Joint Employment,” this regulation begins by stating that “[a] single individual may stand in the relation of an employee to two or more employers at the same time under the [FLSA], since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer.” 29 C.F.R. §791.2(a) (2005). The regulation then explains:

“Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:

(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.” 29 C.F.R. §§791.2(b)(1), (b)(2), (b)(3) (2005).

According to plaintiffs, Huston-Patterson qualifies as plaintiffs’ employer under subsections (2) and (3) of the foregoing regulation.

Plaintiffs’ reliance upon the Code of Federal Regulations is misplaced. The cited regulation was issued by the United States Department of Labor and construes the Fair Labor Standards Act of 1938, which was enacted by the United States Congress and is not being applied in this case. As importantly, the Illinois Department of Labor has issued its own set of regulations construing the Illinois Wage Payment and Collection Act, which was enacted by the Illinois General Assembly and 
is
 being applied in this case. And unlike the regulations issued by the United States Department of Labor, the regulations issued by the Illinois Department of Labor make no provision whatsoever for joint employer liability. Of course, the fact that the Illinois Department of Labor did not specifically provide for joint employer liability does not mean that joint employer liability is precluded under the Wage Act. As always, our focus in such matters is the statutory language, given its plain and ordinary meaning.
 Illinois Graphics Co.
, 159 Ill. 2d at 479. Nevertheless, the interpretation of a statute by involved administrative bodies constitutes “an informed source for guidance when seeking to ascertain the legislature's intention when the statute was enacted.” 
Johnson v. Marshall Field & Co.
, 57 Ill. 2d 272, 278 (1974). If the Illinois Department of Labor was convinced that the Wage Act allowed for joint employer liability on terms identical to the FLSA, it easily could have adopted the federal regulation setting forth those terms. Its failure to do so leaves open the possibility that, in Illinois, the joint employment question is assessed by a standard other than that crafted by the United States Department of Labor.

We turn, then, to the statutory language, which states that “[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee.” 820 ILCS 115/5 (West 2002). “Employer” is defined as “any individual, partnership, association, corporation, business trust *** for which one or more persons is gainfully employed” (820 ILCS 115/2 (West 2002)), and “employee” is defined as “any individual permitted to work by an employer in an occupation” (820 ILCS 115/2 (West 2002)). These definitions are quite broad, and nothing in the language suggests that an “employee” is limited to only one “employer” for Wage Act purposes. Combined with the fact that joint employment is a recognized legal doctrine in Illinois (see 
Orenic v. Illinois State Labor Relations Board
, 127 Ill. 2d 453, 474 (1989)), the breadth of the statutory language convinces us that joint employer liability is allowed by the Wage Act.

This does not mean, however, that the standard for determining whether joint employment exists is that articulated by the United States Department of Labor. On the contrary, this court has articulated its own standard for determining if joint employment exists, and it is that standard that we will apply. In 
Village of Winfield v. Illinois State Labor Relations Board
, 176 Ill. 2d 54 (1997), this court confirmed that, in Illinois, “[t]he test for the existence of joint employers is whether ‘ “two or more employers exert significant control over the same employees–where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment.” ’ ”
 Village of Winfield
, 176 Ill. 2d at 60, quoting 
Orenic
, 127 Ill. 2d at 474, quoting 
National Labor Relations Board v. Browning-Ferris Industries of Pennsylvania, Inc.
, 691 F.2d 1117, 1124 (3d Cir. 1982). Relevant factors to consider include  “the ‘putative joint employer’s role in “hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job.” ’ ”
 Village of Winfield
, 176 Ill. 2d at 60, quoting 
Orenic
, 127 Ill. 2d at 475, quoting J. Jansonius, 
Use and Misuse of Employee Leasing
, 36 Lab. L.J. 35, 36 (1985).

Applying this standard to the case before us, we must reject plaintiffs’ assertion that, along with Kowa Printing, Huston-Patterson was plaintiffs’ joint employer. Kowa Printing and Huston-Patterson were distinct corporate entities that operated out of separate facilities in separate cities; were formed at different times; and had separate employees, separate management, separate bank accounts, separate collective bargaining agreements, and separate retirement plans. Although some Huston-Patterson employees worked out of Kowa Printing’s Danville facility, there is no evidence that Huston-Patterson employees exercised any degree of control over Kowa Printing employees. In fact, plaintiffs do not even attempt to argue that Huston-Patterson played a role in setting or controlling the essential terms and conditions of plaintiffs’ employment, be it hiring, firing, discipline, hours, or wages. Nor could they, as plaintiffs concede in their opening brief that the essential terms and conditions of their employment were controlled by “two separate collective bargaining agreements *** entered into between Kowa Printing and Graphic Communications International Union” and that Thomas Kowa signed those agreements “upon behalf of Kowa Printing.” Huston-Patterson was not a party to these agreements, and nothing in the record suggests that Huston-Patterson played any role in the collective bargaining process.

That said, we have no reason to doubt plaintiffs’ assertion that Thomas Kowa, as the sole officer and director of both firms, “exercised complete dominion over Huston-Patterson and Kowa Printing from his office at Huston-Patterson’s plant.” This is what sole officers and directors do. But while this observation may have some degree of relevance in assessing the existence of joint employment under section 791.2(b)(3) of the Code of Federal Regulations, it has no immediate relevance in the present case. There is no evidence to suggest that, simply because Thomas Kowa controlled both Huston-Patterson and Kowa Printing Corporation, Huston-Patterson controlled the terms and conditions of plaintiffs’ employment. Absent such evidence, plaintiff’s Wage Act claim against Huston-Patterson must fail.

CONCLUSION

We agree with the appellate court’s conclusion that neither Thomas Kowa nor Huston-Patterson qualifies as plaintiffs’ “employer” under the Wage Act. Accordingly, the judgment of the appellate court is affirmed.

Affirmed
.

JUSTICE KILBRIDE, concurring in part and dissenting in part:

I agree with the majority’s analysis regarding the status of defendant Huston-Patterson Corporation as an “employer” under section 2 of the Wage Act and therefore join in that portion of the opinion. I disagree, however, with the analysis regarding defendant Thomas Kowa and must therefore respectfully dissent.

The reasoning supporting the determination of Huston-Patterson’s status is not applicable to Thomas Kowa. Kowa clearly is an “employer” under section 13 of the Act, because the trial court found that the evidence in the case established that he is the owner and principal shareholder in Kowa Printing Group, Inc., makes all corporate decisions, and is primarily responsible for corporate operations. According to the express terms of section 13, an officer or agent of the corporation who knowingly permitted the corporation to violate the provisions of the Act “shall be deemed to be the employer[ ] of the employees of the corporation.” 820 ILCS 115/13 (West 2002). The trial court found that Thomas Kowa had knowingly violated the Act and was thus liable for payment of the defaulted wage supplements. The majority has rejected the factual findings of the trial court without affording it the deference due under the manifest weight of the evidence standard of review, and therefore I respectfully dissent from that holding.

The trial court conducted an extensive review of evidence offered at trial and made a factual determination that Thomas Kowa was aware of the corporation’s dire financial status and the bank’s intent to take it over. Yet, as the trial court found, he chose not to notify the plaintiffs and thereby allow them time to seek alternative employment and take the vacation and severance payments due under their contracts. Instead, Thomas Kowa kept them on the job right up to the point of the bank takeover.

 It is well established that factual determinations of the trial court are reviewed under the manifest weight of the evidence standard. 
Eychaner v. Gross
, 202 Ill. 2d 228, 251 (2002). “The court on review must not substitute its judgment for that of the trier of fact.” 
Kalata v. Anheuser-Busch Cos.
, 144 Ill. 2d 425, 434 (1991). Findings of fact will not be overturned on appeal “unless they are palpably against the weight of the evidence, even though we might be inclined to find otherwise.” 
Kolze v. Fordtran
, 412 Ill. 461, 468-69 (1952). Nonetheless, the majority conducts its own review of some of the evidence at trial and reaches a conclusion contrary to that of the trial court. Slip op. at 8-10.

The majority does not identify the standard it applied to reviewing the trial court’s finding that Thomas Kowa knowingly violated the provisions of the Act requiring payment of “the final compensation of separated employees in full, at the time of separation.” 820 ILCS 115/5 (West 2002). Undoubtedly, this finding depended on a review of documentary evidence and witness testimony, as the court had to determine whether a knowing violation had in fact occurred. In reaching its conclusion that Thomas Kowa had committed a knowing violation of section 5 of the Act, the trial court reasoned that documents admitted in evidence establish he was able to make the payments at the time of the takeover because he made similar payments pursuant to a claim filed by the Illinois Department of Labor. The court further found, based on the evidence, that plaintiffs had earned the claimed vacation and severance pay at the time of the takeover and Kowa Printing still maintained its corporate existence at the time of trial.

The evidence also showed that negotiations with a prospective buyer collapsed when the unions involved did not concede proposed reductions in accrued vacation pay and other benefits. These negotiations occurred during the extension of the forbearance agreement to March 15, 1998. The evidence established that Thomas Kowa executed a surrender agreement with the bank on March 13, 1998, acknowledging the failure of all reorganization efforts. The surrender agreement referenced an April 6, 1998, takeover date, but the bank did not actually take over the operation and assets of Kowa Printing until April 16, 1998.

Thus, as the trial court found, Thomas Kowa, the sole decisionmaker for Kowa Printing, knew the bank takeover was a certainty, but nevertheless allowed the employees to continue working and accruing benefits for more than one full month after executing the surrender agreement. In the agreement, Thomas Kowa acknowledged that the total value of the collateral available from the takeover of Kowa Printing assets was less than the amount of the defaulted debt. Rather than notifying plaintiffs of the certain demise of the company when negotiations broke down, thus affording them an opportunity to pursue other employment and demand their contractual severance and vacation pay, Thomas Kowa told them nothing of the impending imminent takeover. These findings of fact supported the trial court’s conclusion that Thomas Kowa was a statutory employer under section 13 of the Act who knowingly permitted a violation of section 5’s termination requirements.

After reviewing the same evidence, however, the majority concluded nothing in the record suggests that either the demise of Kowa Printing or the loss of plaintiffs’ jobs was inevitable. Slip op. at 9. Although the majority acknowledges the execution of the March 13, 1998, surrender agreement, it makes no reference to the significance of the April 6, 1998, date set for the surrender of Kowa Printing assets and the application of the assets to corporate debt. Further, the majority speculates that if an agreement had been reached on the day of foreclosure, “operations would have continued, plaintiffs would have kept their jobs, and this case never would have been filed.” Slip op. at 9. It perhaps belabors the obvious to point out that negotiations did break down and, as a result, Thomas Kowa executed the surrender agreement. Whether the negotiations broke down because of union intransigence or the buyer’s insistence on the disputed concessions, Thomas Kowa knew with certainty of the imminent cessation of company operations. In any event, the right of employees to accrued wages and benefits pursuant to section 5 is not dependent on their willingness to bargain over those benefits.

The majority asserts that once negotiations broke down, it was too late for Thomas Kowa to do anything “as BankIllinois immediately moved in and seized all of Kowa Printing’s assets.” Slip op. at 9. This assertion ignores the established fact that Kowa Printing, under Thomas Kowa’s direction, continued operations for more than one full month after the execution of the surrender agreement that expressly acknowledged the failed efforts to reorganize.

Finally, the majority concludes the “evidence suggests that Thomas Kowa made every effort to ensure that plaintiffs’ livelihoods survived Kowa Printing’s unexpected financial downturn.” Slip op. at 10. Even if this conclusion were justified, the trial court’s contrary conclusion is at least equally justified.

The majority has apparently based its conclusion on its own interpretation of the factual record and has afforded 
no
 deference to the fact findings of the trial court on the issue of Thomas Kowa’s liability. This is clearly contrary to the applicable standard of review. The trial court’s application of its factual findings is well supported by the record and is not against the manifest weight of the evidence. Accordingly, I respectfully dissent from the majority’s affirmance of the appellate court’s judgment in favor of defendant Thomas Kowa.

FOOTNOTES
1:     
1
There is certainly nothing in the legislative history to suggest that the General Assembly envisioned such a draconian upheaval of traditional employment law principles. On the contrary, the legislative history reveals that the Wage Act was passed swiftly, unanimously, and with almost no debate or discussion.

2:     
2
Section 203(d) states that “[a]s used in this chapter *** ‘[e]mployer’ includes any person acting directly or indirectly in the interest of an employer in relation to an employee.” 29 U.S.C. §203(d) (1988).