2020 IL App (1st) 192401-U

FIRST DISTRICT
SECOND DIVISION
June 16, 2020

No. 1-19-2401

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| GLENN MEIER and GERALD OSLANCE, individually and on behalf of all others similarly situated, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellees, | ) ) | No. 14 CH 11513 |
| v. | ) ) ) | Honorable Anna Demacopoulos, Judge Presiding. |
| ROBERT V. ROHRMAN, individually, ROBERT V. ROHRMAN, INC. d/b/a SCHAUMBURG HONDA AUTOMOBILES, ROHR-MONT MOTORS, INC. d/b/a OAKBROOK TOYOTA, ROHR-BURG MOTORS, INC. d/b/a BOB ROHRMAN SCHAUMBURG FORD, ROHRMAN MIDWEST MOTORS, INC. d/b/a ARLINGTON KIA, ROHR-GROVE MOTORS, INC. d/b/a ARLINGTON NISSAN, ROHRMAN MIDWEST MOTORS, INC. d/b/a ARLINGTON ACURA, RHOR-LEX MOTORS, INC. d/b/a ARLINGTON LEXUS, ROHR-GURNEE MOTORS, INC. d/b/a GURNEE HYUNDAI, ROHR-GURNEE MOTORS, INC. d/b/a GURNEE VOLKSWAGEN, ROHR-MITS MOTORS, INC. d/b/a SCHAUMBURG KIA, and ROBERT V. ROHRMAN, INC. d/b/a BOB ROHRMAN USED CAR SUPERSTORE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellants. | ) | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court did not abuse its discretion in finding that the named plaintiffs were adequate class representatives and certifying the class to the present.

¶ 2     In this Illinois Supreme Court Rule 306(a)(8) (eff. Jan. 1, 2016) interlocutory appeal, defendants Robert V. Rohrman, individually, Robert V. Rohrman, Inc. d/b/a Schaumburg Honda Automobiles, Rohr-Mont Motors, Inc. d/b/a Oakbrook Toyota, Rohr-Burg Motors, Inc. d/b/a Bob Rohrman Schaumburg Ford, Rohrman Midwest Motors, Inc. d/b/a Arlington Kia, Rohr-Grove Motors, Inc. d/b/a Arlington Nissan, Rohrman Midwest Motors, Inc. d/b/a Arlington Acura, Rhor-Lex Motors, Inc. d/b/a Arlington Lexus, Rohr-Gurnee Motors, Inc. d/b/a Gurnee Hyundai, Rohr-Gurnee Motors, Inc. d/b/a Gurnee Volkswagen, Rohr-Mits Motors, Inc. d/b/a Schaumburg Kia, and Robert V. Rohrman, Inc. d/b/a Bob Rohrman Used Car Superstore (collectively referred to as "defendants") appeal the trial court's order granting plaintiffs Glenn Meier and Gerald Oslance's motion for class certification. Meier and Oslance filed this suit, individually and on behalf of all others similarly situated, alleging that defendants violated the Illinois Wage Payment and Collection Act (Act) (820 ILCS 115/9 (West 2014)) by deducting a percentage of business losses from employee wages without first obtaining the required "express written consent of the employee, given freely at the time the deduction is made." On appeal, defendants argue that (1) Meier and Oslance were inadequate class representatives because they worked exclusively at one dealership, (2) a conflict of interest exists between Meier and Oslance and another class member, and (3) the class certification period should not extend to the present. For the reasons that follow, we affirm.

¶ 3                                  BACKGROUND

¶ 4     Meier and Oslance worked as finance and insurance managers at Schaumburg Honda Automobiles ("Schaumburg Honda") located at 750 East Golf Road in Schaumburg. Meier worked

at Schaumburg Honda from May 1993 until June 2014, and Oslance worked from May 1985 until August 2012. Schaumburg Honda is one car dealership of within "The Bob Rohrman Auto Group" (BRAG). Robert V. Rohrman is BRAG's founder, president, vice-president, and secretary and owns or owns a controlling share of all BRAG dealerships, which are individually named as defendants. BRAG is not incorporated to do business as an entity and none of the individual dealerships do business under the BRAG name.

¶ 5        During the course of their employment, Meier and Oslance claim that they were subject to wage deductions under a "Money Due" policy for business losses sustained by the dealership. Meier and Oslance assert that the wage deduction practice was uniformly applied to all managers working at a BRAG dealership. They argue that any consent for the wage deduction was not freely given because it was understood that the refusal to sign the deduction authorization form could result in termination.

¶ 6        Meier and Oslance filed this action against defendants, asserting that defendants' practice of deducting managers' wages without "the express written consent of the employee, given freely at the time the deduction is made" violated the Act. 850 ILCS 115/9 (West 2014). Meier and Oslance moved to certify their action as a class action. The exhibits attached to the motion in support of the class action included: (1) the "Money Due" policy issued to general managers and written on "Bob Rohrman Auto Group" letterhead, which "requires the Sales and Finance Management to participate in any loss incurred as a result of your failure to follow company policy;" (2) the "Money Due Reports" policy issued to general and office managers and written on "Bob Rohrman Auto Group" letterhead, which requires a biweekly report to be faxed to Rohrman; (3) the "Bob Rohrman Automobile Dealerships Payroll Deduction Authorization" form; (4) the "Bob Rohrman Auto Group – Chicagoland Division" "pay plan" (compensation) form; and

(5) the "Bob Rohrman Automobile Dealership Employee Handbook," which included a "Welcome to the Rohrman Dealerships" message signed by Rohrman and "General Company Policies."

¶ 7 Defendants moved for summary judgment, asserting, in part, that Meier and Oslance were inadequate class representatives because they worked exclusively at one dealership and the other dealerships named as defendants could not be considered their "employer" under the Act.

¶ 8 Summarized below are relevant portions of discovery depositions relied on by the parties.

¶ 9 Oslance and Meier testified that their wages were deducted for "write-offs," which could include uncollected bad checks, fraudulent purchase of vehicles, and government-imposed penalties. Oslance explained that "we would be charged for just about anything that could be imagined that the dealership could end up losing money." Both former employees testified consistently that consent for the deductions was not freely given, but given under duress. Meier complained about the write-off policy to his office manager, but was told that "this was a policy that was impacting [ ] this category of managers equally." Although Meier worked exclusively at Schaumburg Honda, Oslance testified that he provided services for other dealerships.

¶ 10 Rohrman testified that he has 14 dealerships in Illinois and 1600 employees. BRAG is a term of art that refers to a group of car dealerships that he owns or owns a controlling share of. Each dealership is a separate corporation operating independently, with separate bank accounts, registered dealer number, police book, federal employer identification number, and payroll. At one time, Rohrman had other individuals as secretary of the BRAG dealerships, but "changed it all with me as the president, secretary, and vice-president and all so I could sign one thing."

¶ 11 Rohrman explained that one comptroller, director of operations, and in-house attorney have responsibility over all Illinois dealerships and each dealership contributes towards their salary. Those individuals each receive a paycheck from Lexus of Arlington. The attorney "works for the

Bob Rohrman Auto Group." Rohrman also hired Mark Battista, who "keeps us out of trouble." Rohrman could not remember Battista's job title, "because it's been so long ago I gave him the job title [and] the job title don't mean anything today because he does a lot of the things that are not in that job title now too." Battista's duties and responsibilities apply to all BRAG dealerships.

¶ 12    Every dealership has a general manager and all general managers report directly to him. Rohrman and the comptroller did monthly "rounds" at the various dealerships. Rohrman was "mean at [the dealerships] that we lost money at on the last month." His grandson, Ryan Rohrman, is his "backup" and "is taking over right in back of me." Ryan also participated in the monthly "rounds."

¶ 13    Rohrman stated that every employee receives a copy of the employee handbook. Most of the information in the handbook is consistent for every dealership, but there are some differences because each dealership operates on its own. For example, employee benefits and employee job descriptions may differ among the dealerships.

¶ 14    According to Rohrman, the "Money Due" policy, which he approved, was distributed to every dealership and applies to general managers, new car managers, desk managers, general sales managers, used car sales managers, and finance and insurance managers. A percentage of the business loss or "write-off" was allocated to the respective manager and deducted from his or her wages. Managers received an "employee statement" when they were hired that outlines their salary and authorization for deductions from their wages, which included money collected under the "write-off" policy. "If they want to go to work for us, they sign it; and if they don't want to go to work for us, they don't sign it."

¶ 15    Ryan Rohrman testified that he has been director of operations since January 1, 2016 and receives a check from Lexus of Arlington. Before that position, he was the general manager of

Schaumburg Honda from February 1, 2011 to January 1, 2016, and both Meier and Oslance worked for him. As the director of operations, he consults with every Illinois dealership on a weekly basis, sometimes multiple times a week. He works directly for Rohrman and helps the general managers run their stores.

¶ 16 According to Ryan, there is no formal BRAG entity and that term just refers to a group of car dealerships that Rohrman owns. BRAG has an employee handbook that applies to all employees, and general managers have the authority to run their stores in accordance with that employee handbook, but have no authority to make their own rules or create their own employee handbook.

¶ 17 Ryan explained that the "write-off" policy exists to recoup losses from the respective managers for negligence occurring at a dealership that could have been prevented by the mangers. General managers impose "write-offs" at their discretion. When Ryan was the general manager of Schaumburg Honda, there was never an instance where there was a payroll deduction to a manger's salary without a signed authorization form. Ryan recalled an incident where Meier and the finance department did not follow proper procedures, which resulted in the theft of a vehicle. Ryan decided to charge a portion of that loss to the managers. Ryan and 10 other managers signed the payroll deduction authorization form, but Meier refused to do so. Ryan suspended Meier twice over his refusal to sign the form, and Meier ultimately never returned to work.

¶ 18 Mark Battista testified that he is personally employed by Rohrman and is a "Director for Bob Rohrman." Battista is the registered agent for the dealerships within BRAG. Battista explained that each dealership has its own (1) dealership license, (2) Illinois business tax number, (3) employee tax number, (4) bank accounts, and (5) accounting department. BRAG is "a term of art that has been used for many, many years, and it is a non-entity. It's not a corporation or a d/b/a, but

it's been used kind of as a brand for advertising. *** It has no assets. It has no liabilities."

¶ 19      According to Christina Antonetti, Rohrman promoted her from office manager to comptroller for BRAG, *i.e.*, the Chicagoland dealerships. She reports directly to Rohrman and the office managers at the dealerships report to her. The BRAG human resources director or manager is responsible for managing and administering the 401(k) for every dealership, along with verifying that new employees complete the proper paperwork.

¶ 20      Antonetti stated that Battista determines whether a write-off deduction from an employee's wages is necessary and she processes the payroll deduction. Employees must consent to the deduction and a form is used every time there is a deduction from an employee's paycheck. Regarding the employee handbook, every employee of every dealership receives a copy of the employee handbook, and general managers have no authority to create their own employee handbook. The employment policies in the handbook apply to all BRAG dealerships.

¶ 21      Before his retirement in January 2015, John Hoffman was the "Director of Fixed Operations, Chicagoland area." Hoffman stated that he was employed by Rohrman and reported exclusively to him. Hoffman consulted the parts and service departments for the Chicagoland dealerships, and those dealerships contributed towards his salary.

¶ 22      Hoffman held a meeting six or seven times a year for all parts and service managers at one dealership location, and the location of the meeting would change. Ryan and Battista occasionally attended those meetings. Hoffman only consulted and made recommendations to the general managers, because the general manager ran the dealership. "Rohrman himself remind[ed] me that the general manager runs the store, I don't."

¶ 23      Hoffman interviewed individuals for all positions of fixed operations. On occasion, a parts and service employee would be promoted to a manager position at a different dealership, but

Rohrman would have to first approve the promotion. Rohrman authorized any pay plan changes for compensation paid to the "manager, service manager, or parts manager." He participated in interviews for general managers, but Rohrman made the final decision and hired all general managers. Rohrman, as needed, would discipline the general managers. The only person general managers "would answer to" was Rohrman.

¶ 24    Following a two-day hearing on the motion for summary judgment and the motion for class certification, the trial court denied defendants' motion for summary judgment finding genuine issues of material fact as to "what relationship existed between BRAG, Bob Rohrman individually, Bob Rohrman, Inc., and all of the other entities." The trial court also granted the motion for class certification and appointed Oslance and Meier as class representatives. The trial court "slightly modified" the class definition, certifying it as:

> "Employees who work or worked at a group of New and Used Car Dealerships which Bob Rohrman owns or owns the controlling share of in Illinois, consisting of General Managers, Finance and Insurance Managers, General Sales Managers, New Car Sales Managers, Used Car Sales Managers, Desk Managers, or other similarly-titled managerial positions, at any time, from July 14, 2004 to the present, and whom had wages deducted by Defendants for ordinary business losses without providing written, contemporaneous authorization for such deductions. Dealerships specifically consisting of:
>
> (1)    Robert V. Rohrman, Inc. d/b/a Schaumburg Honda Automobiles;
>
> (2)    Rohr-Mont Motors, Inc. d/b/a Oakbrook Toyota;
>
> (3)    Rohr-Burg Motors, Inc. d/b/a Bob Rohrman Schaumburg Ford;
>
> (4)    Rohrman Midwest Motors, Inc. d/b/a Arlington Kia;

(5)    Rohr-Grove Motors, Inc. d/b/a Arlington Nissan;

(6)    Rohrman Midwest Motors, Inc. d/b/a Arlington Acura;

(7)    Rohr-Lex Motors, Inc. d/b/a Arlington Lexus;

(8)    Rohr-Lex Motors, Inc. d/b/a Gurnee Hyundai;

(9)    Rohr-Gurnee Motors, Inc. d/b/a Gurnee Volkswagen;

(10)    Rohr-Mits Motors, Inc. d/b/a Libertyville Mitsubishi; and

(11)    Rohr-Schaumburg Motors, Inc. d/b/a Schaumburg Kia."

¶ 25                                         ANALYSIS

¶ 26      Defendants argue that Meier and Oslance were inadequate class representatives because they cannot represent the interests of managers who were employed by a different dealership.

¶ 27      Under section 9 of the Act, "deductions by employers from wages *** are prohibited unless such deductions are *** made with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9 (West 2014). Section 2 of the Act defines "employer" as "any individual, partnership, association, corporation, limited liability company *** or any person or group of persons acting directly or indirectly in the interest of an employer in relations to an employee, for which one or more person is gainfully employed." 820 ILCS 115/2 (West 2014). The Act also provides that "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ICLS 115/13 (West 2014). To bring a claim under the Act, a plaintiff "must plead that (1) he had an employment agreement with the employer that required the payment of wages or final compensation and (2) that the defendants were employers under the Wage Act." *Watts v. ADDO Management, L.L.C.*, 2018 IL App (1st) 170201, ¶ 14.

¶ 28    Section 2-801 of the Code of Civil Procedure sets forth the following four "prerequisites for the maintenance of a class action: *** (1) The class is so numerous that joinder of all members is impracticable. (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members. (3) The representative parties will fairly and adequately protect the interests of the class. (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/ 2–801 (West 2014). The party seeking certification bears the burden of establishing all four statutory prerequisites. *Gridley v. State Farm Mutual Automobile Insurance Co.,* 217 Ill. 2d 158, 167 (2005); *Arnold v. Kapraum, P.C.*, 2018 IL App (1st) 172854 ¶ 14. In deciding whether to certify a class, "the trial court accepts the allegations of the complaint as true and should err in favor of maintaining class certification." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App (1st) 131465, ¶ 9. We will not disturb a trial court's ruling regarding class certification unless the court abused its discretion or applied impermissible legal criteria. *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 447 (2006). A trial court abuses its discretion "only where no reasonable person would take the position adopted by the" court. *Peach v. McGovern*, 2019 IL 123156, ¶ 25.

¶ 29    The only class action prerequisite at issue here is whether Meier and Oslance "will fairly and adequately protect the interests of the class." Adequate representation requires a consideration of "whether the interests of the named parties are the same as the interests of those who are not named" and that class members receive "appropriate protection of their interests in the presentation of the claim." *Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 778 (2008). A class representative "cannot adequately represent a class when the representative does not state a valid cause of action." *De Bouse v. Bayer*, 235 Ill. 2d 544, 560 (2009). Thus, we must first determine whether Meier and Oslance pled an actionable claim against defendants. *Barbara's Sales, Inc. v. Intel Corp.,* 227 Ill.

2d 45, 72 (2007); *Acevedo v. Cook County Sheriff's Merit Board*, 2019 IL App (1st) 181128, ¶ 38; *Stefanski v. City of Chicago*, 2015 IL App (1st) 132844, ¶ 15; *Uesco Industries, Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App (1st) 112566, ¶ 48.

¶ 30        Defendants argue that Meier and Oslance failed to plead an actionable claim because, except for Schaumburg Honda, the other dealerships were neither an employer nor joint employer under the Act, having exerted no control over the terms and conditions of their employment.

¶ 31        The Act recognizes joint employers. *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 117 (2005). The test for a joint employer "is whether ' "two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment." ' " *Village of Winfield v. Illinois State Labor Relations Board,* 176 Ill. 2d 54, 60 (1997) (quoting *Orenic v. Illinois State Labor Relations Board,* 127 Ill. 2d 453, 474 (1989) (quoting *National Labor Relations Board v. Browning–Ferris Industries of Pennsylvania, Inc.,* 691 F.2d 1117, 1124 (3d Cir.1982))). The relevant factors to consider in determining "joint employer" status "include the 'putative joint employer's role in "hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job." ' " *Id.* (quoting *Orenic,* 127 Ill. 2d at 475 (quoting J. Jansonius, *Use and Misuse of Employee Leasing,* 36 Lab. L.J. 35, 36 (1985))).

¶ 32        As defendants note, each dealership is separately incorporated and maintains a separate: (1) location, (2) distinct assumed name, (3) state issued dealership license, (4) state business tax number, (5) federal employer identification number, (6) books and records, and (7) inventory of new and used cars. But defendants urge us to ignore the fact that Rohrman, as president, dictated the essential terms and conditions of employment either directly or through key employees that

11

uniformly applied to all managers employed at all dealerships. Rohrman had ultimate oversight over and directly monitored all dealership business operations, evidenced by the monthly meetings at each dealership, requiring each general manager to report directly to him, and requiring a biweekly "Money Due Report" faxed to him. Rohrman hired and disciplined, when necessary, the general managers and approved changes to managers' compensation agreements.

¶ 33      Rohrman also approved and implemented at *every* dealership the "Money Due" policy, which deducted from managers' wages a percentage of certain write-offs. All managers were subject to the "Money Due" policy. Battista decided whether the "Money Due" policy should be enforced at each dealership and the related payroll deductions were completed by one individual, the comptroller. Meier and Oslance asserted that authorization for the deductions to employee wages was only given under a fear of being terminated. The "Money Due" policy, "Money Due Report" policy, and "Pay Plan" form were all documented on "Bob Rohrman Auto Group" letterhead. Defendants do not dispute the existence or enforcement of any of the policies.

¶ 34      Likewise, "The Bob Rohrman Employee Handbook," was the only employee handbook and every employee hired at one of "The Bob Rohrman Automobile Dealerships" received a copy of it. All employees were subject to the policies in the handbook, which addressed matters such as discipline, pay advances, personal appearances, and other terms and conditions of employment. General managers had no authority to create a replacement employee handbook.

¶ **35**      Further indications of control and oversight include Rohrman directly hiring Battista, the comptroller, director of operations, and in-house counsel, who all performed services for every dealership within BRAG and reported directly to him. Not only did Rohrman directly hire those employees, but he also had the discretion to fire those employees (he had fired a previous comptroller). Moreover, parts and service managers attended a meeting multiple times a year held

at a different Rohrman dealership, which Battista and Ryan occasionally attended.

¶ 36 Although Meier and Oslance still bear the burden of proving the ultimate facts and allegations pled at trial and we express no opinion regarding the merits of their claims, we find that they have pled an actionable claim for class certification purposes. *Zabinsky v. Gelber Group, Inc.*, 347 Ill. App. 3d 243, 250 (2004); see contra *Andrews*, 217 Ill. 2d at 112 (evidence at trial established that the former owner no longer controlled the business because the bank seized and took over the corporation). Thus, the trial court did not abuse its discretion in certifying the class and naming Meier and Oslance as class representatives.

¶ 37 Defendants also claim that Meier and Oslance were inadequate to represent the class because a conflict of interest arises between the named plaintiffs and their supervisor (Ryan), a class member who enforced the wage deduction.

¶ 38 Named class representatives must be free from a conflict of interest with the represented class members. *Slimack v. Country Life Insurance Co.*, 227 Ill. App. 3d 287, 299 (1992). Importantly, Meier and Oslance were not supervisors enforcing the contested "Money Pay" policy, but managers with first-hand knowledge of and subject to the policy. See *Cruz*, 383 Ill. App. 3d at 779 (a supervisor who did not participate in the contested practice of requiring employees to report to their workstations before the start of their shift was an adequate class representative). Similarly, there is no indication that Meier and Oslance would be competing for limited relief with any of the class members. *Id.* Meier and Oslance's interests are the same as the class members, who allegedly did not freely consent to wage deductions. Thus, the trial court did not abuse its discretion in finding no conflict of interest that would preclude Meier and Oslance from adequately and fairly representing the interests of the class. *Id.* at 778.

¶ 39 Finally, defendants claim that the trial court abused its discretion in certifying the class

"from July 14, 2004 to the present" when Meier and Oslance's employment terminated in 2014 and 2012, respectively.[1] See *Lee v. Buth-Na-Bodhaige, Inc.*, 2019 IL App (5th) 180033, ¶ 74 (quoting 735 ILCS 5/2-801(4) (West 2016)) ("class period is an important factor in determining whether certification of a class is 'an appropriate method for the fair and efficient adjudication of the controversy.' ") Defendants argue that Meier and Oslance were inadequate class representatives because they were not subject to the "Money Due" policy for the entire class period. However, defendants do not claim that the "Money Due" policy has been eliminated. Indeed, the deposition and affidavit evidence establish that the disputed policy was still in effect when the class was certified. Moreover, Meier and Oslance are adequate class representatives because the class consists of "employees who work or worked" at a respective dealership. Thus, the trial court did not abuse its discretion in certifying the class period "to the present."

¶ 40                              CONCLUSION

¶ 41        The trial court did not abuse its discretion in certifying the action as a class action and naming Meier and Oslance as class representatives.

¶ 42        Affirmed.

---

[1] Meier and Oslance argue that defendants forfeited this argument by failing to raise it in the trial court, but this is an interlocutory appeal pursuant to Rule 306(a)(8). Defendants included their objection to the class period in their petition for interlocutory appeal and determining the class period was inherent in certifying the class.